414 F.2d 615
 George CAPLAN, Solomon Caplan and Albert Caplan, Plaintiffs-Appellees-Cross Appellants,
v.
Clint JOHNSON, Hazel Johnson, et al., Defendants,
v.
Underwriters at Lloyds, London, Garnishee-Appellant-Cross Appellee.
 No. 27147 Summary Calendar.
 United States Court of Appeals Fifth Circuit.
 June 19, 1969.
 Rehearing Denied August 14, 1969.
 
 B. E. Hendricks, Hendricks & Hendricks, Miami, Fla., and Lord, Bissell & Brook, Chicago, Ill., for appellants and cross-appellees.
 Paul C. Huck, William S. Frates, Larry S. Stewart, Frates, Fay, Floyd & Pearson, Miami, Fla., for appellees-cross appellants.
 Before BELL, AINSWORTH and GODBOLD, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellees, George Caplan, Solomon Caplan and Albert Caplan, brought this action against Lloyds, London, appellant, in order to garnish the proceeds of a False Arrest Liability Insurance Policy issued by Lloyds. The debt upon which the garnishment is based arose by virtue of a judgment for $15,000 compensatory damages[1] against the insureds of Lloyds in a prior civil action brought by appellees in federal court, pursuant to 42 U.S.C. §§ 1983 and 1985, for deprivation of civil rights by a deliberate scheme of false arrests and prosecutions under color of state law.[2]
 
 
 2
 In the present case the District Court granted appellees' motion for summary judgment, and this appeal followed.[3]
 
 
 3
 Appellant contends that the Trial Court erroneously granted summary judgment herein, because judgment in the original proceeding was improvidently awarded. Appellant alleges, inter alia, that a prior state court judgment rejecting appellees' demands was res judicata of the civil rights action in federal court, and that the insureds did not commit any acts of false arrest, false imprisonment, or malicious prosecution. However, appellant may not collaterally attack appellees' judgment in the present case:
 
 
 4
 "Where there has been a valid final judgment against the insured, establishing his liability to one injured or damaged by his conduct, the insurer usually must accept such judgment as conclusively establishing that liability. Ordinarily, therefore, the insurer is bound by all facts and matters necessarily adjudicated in the original action * * *.
 
 
 5
 "Even though the insurer may have disclaimed liability and refused to defend the principal suit, the same rule applies, and the insurer is foreclosed from again adjudicating the matters determined in such action." [Citing, inter alia, Columbia Casualty Co. v. Hare, 116 Fla. 29, 156 So. 370 (1934)]
 
 
 6
 20 Appleman, Insurance Law and Practice ¶ 11521, pp. 375-376, 378 (1963). See also Maryland Casualty Company v. Mitchell, 5 Cir., 1963, 322 F.2d 37, 39; Aetna Casualty and Surety Company v. Hase, 8 Cir., 1968, 390 F.2d 151, 152; Stephenson v. Duriron Company, S.D. Ohio, 1968, 292 F.Supp. 66. See generally 1B Moore, Federal Practice ¶ 0.405 [9] (2 ed. 1965).
 
 
 7
 The principal issue in this suit, therefore, is whether the cause of action upon which appellees obtained judgment against the insureds is within the coverage of the liability insurance policy issued by appellant.[4] Maryland Casualty Company v. Mitchell, supra. See Bettinger v. Northwestern Nat. Cas. Co., 8 Cir., 1954, 213 F.2d 200, 205-206. We hold that the judgment secured against the insureds under 42 U.S.C. §§ 1983 and 1985 is covered by the policy, and hence that appellant is liable for the amount of the judgment. Cf. Whirl v. Kern, 5 Cir., 1969, 407 F.2d 781.
 
 
 8
 In relevant part, the False Arrest Liability Policy issued by Lloyds herein states that
 
 
 9
 "* * * this insurance covers the Assured against loss by reason of liability imposed by law upon the Assured, by reason of any false arrest, assault and battery (as herein defined), false imprisonment or malicious prosecution * * *."
 
 
 10
 The liability which was imposed on the insureds arose by reason of a series of false arrests. The Supreme Court has held that the Civil Rights Act must be interpreted (where applicable) in the light of common law tort liability. Pierson v. Ray, 386 U.S. 547, 556-557, 87 S. Ct. 1213, 1218-1219, 18 L.Ed.2d 288 (1967); Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). We find no basis in the unqualified language of the policy for the contention that coverage was limited to common law rather than statutory liability. If such a purpose were intended, the policy provisions could have made that intention explicit.
 
 
 11
 We have considered appellant's other contentions and find them to be without merit.[5] There was no error in the allowance of appellees' attorney fees. Fla.Stat. § 627.0127(1), F.S.A.; Johnson v. Atlantic National Insurance Company, 163 So.2d 340 (Fla.D.Ct. of App. 1964); James Furniture Mfg. Co., Inc. v. Maryland Cas. Co., 114 So.2d 722 (Fla. D.Ct. of App.1959).
 
 
 12
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Punitive damages were also awarded, but Florida law does not permit the recovery of such damages from an insurer. North western National Casualty Company v. McNulty, 5 Cir., 1962, 307 F.2d 432. This issue is not raised on appeal
 
 
 [2]
 The prior suit was filed by George Caplan, Solomon Caplan and Albert Caplan in the United States District Court for the Southern District of Florida and resulted in a judgment against Clint Johnson, Hazel B. Johnson and James Rossi, Mayor, Town Clerk and member of the Police Department, respectively, of the Town of Medley, Florida. An appeal from this judgment to this Court was dismissed on March 7, 1968, the appeal having been abandoned
 
 
 [3]
 Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804
 
 
 [4]
 We note parenthetically that appellant stipulated below that the only issues for review were the coverage of the False Arrest Policy and the award of appellees' attorney fees
 
 
 [5]
 There is no merit to the contention that the insureds who were held jointly liable with a non-insured are not liable for the full amount of the compensatory damages. It is well settled that damages should not be apportioned between joint tort-feasors, and that each defendant is liable for the full amount of the award. See, e. g., Kellenberger v. Widener, 159 So.2d 267, 268 (Fla.D.Ct. of App.1964)
 
 
 ON PETITION FOR REHEARING
 PER CURIAM:
 
 13
 Appellant complains that the Court's decision is based on an erroneous conception of the facts, and that there are no facts which show that any false arrest or imprisonment by any of the persons against whom plaintiffs obtained their original judgment are covered by appellant's policy of insurance. Let us again look at the record to see if these contentions are justified.
 
 
 14
 Garnishment against Lloyds for collection of the judgment rendered in favor of plaintiffs arose out of the issuance by Lloyds of a policy of false arrest insurance in favor of the Town of Medley, Florida, Police Department, which policy was in effect for the period October 28, 1963 to October 28, 1964. Clinton B. Johnson, Mayor of Medley, was added to the terms of the policy as an assured by endorsement effective January 3, 1964. The policy provisions indicate that the "insurance covers the Assured against loss by reason of liability imposed by law upon the Assured, by reason of any false arrest * * *, false imprisonment or malicious prosecution which may be committed" during the period the policy is in force.
 
 
 15
 We said in our per curiam opinion that the original suit against the insureds of Lloyds brought under 42 U.S.C. §§ 1983 and 1985 was "for deprivation of civil rights by a deliberate scheme of false arrest and prosecution under color of state law." (Emphasis by the Court.) Though we later referred to liability resulting from "a series of false arrests," it is apparent that we intended our discussion to include both false arrest and malicious prosecution.
 
 
 16
 On November 13, 1963, warrants were issued by one of the defendants in the original damage suit, James N. Rossi, as Deputy Town Clerk, on the affidavit of August V. Dreeson, Police Chief, for the arrest of appellees George Caplan, Solomon Caplan and Albert Caplan. Chief Dreeson, Rossi, as a sergeant in the Medley Police Department, and Officer Walton arrested George and Solomon Caplan, and Rossi, with Walton, then took George and Solomon Caplan to the Miami Springs Police Station.
 
 
 17
 According to the testimony of James H. McDonald, Chief of Police of Miami Springs, Sergeant Rossi, at least five times, insisted that George and Solomon Caplan be "put behind the bars," but Chief McDonald declined to do so though they were held in custody until bail was posted. Though the police officers also had a warrant for Albert Caplan, they did not arrest him because he could not then be found. Thereafter, on February 1, 1964, at the direct order of Clinton B. Johnson, Mayor, warrants were issued again for the arrest of George Caplan, Solomon Caplan and Albert Caplan. Only George Caplan, however, was arrested and incarcerated, Solomon and Albert Caplan not being found. It is true that in the complaint in the original suit in which plaintiffs (appellees) obtained judgment for damages, Rossi was designated as Deputy Town Clerk, but the pretrial stipulation entered into in those proceedings which the parties agreed "shall supplement the pleadings and govern the course of the trial," (emphasis by the Court) states that "The Defendant, Rossi, was a police officer and Deputy Town Clerk of the Town of Medley, at all times material to this cause of action." It also states that plaintiffs contend that one of the numbered series of issues to be litigated is, "19. Whether the arrests of February 1, 1964 were made at the direction of Clint Johnson."
 
 
 18
 The arrests of November 13, 1963 did not occur while Clint B. Johnson, Mayor, was an assured under the policy, but the arrests and prosecutions ordered by Mayor Johnson on February 1, 1964 occurred while he was an assured under the policy. Appellants appear to disregard this important fact.
 
 
 19
 The false arrest policy also covers malicious prosecution. The arrest warrants which were issued in this case, though not always served on each of the plaintiffs, there being occasions when some of them were not found, nevertheless constituted malicious prosecution under the circumstances of the case, and as provided by the law of Florida. See Killen v. Olson (Fla.Sup.Ct.), 59 So.2d 524 (1952). Arrest is not an essential element for malicious prosecution under Florida law. See Tatum Bros. Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So. 623 (1926); Hammond v. Potito (Fla.Dist.Ct. of App., 2d Dist.), 197 So.2d 40, 41 (1967).
 
 
 20
 The gravamen of the complaint under which plaintiffs obtained their original judgment against the insureds of Lloyds was that "the Defendants under color of law pursued a course of conduct arresting and harassing Plaintiffs thus infringing upon Plaintiffs' civil rights." (See pretrial stipulation filed March 21, 1967, paragraph III(a).) When the trial judge granted summary judgment in this case in favor of plaintiffs and against Lloyds, he said, "There is no question that the $15,000 compensatory damages are covered by the terms of the contract." This is the same trial judge who tried the suit for damages against Lloyds' assureds when a jury verdict was returned in favor of plaintiffs. The trial judge was entirely familiar with all of the facts and circumstances surrounding the obtaining of the original judgment. We are convinced, as was the district judge, that the verdict of the jury in favor of the plaintiffs and jointly against Lloyds' assureds was fully covered by the policy of insurance and that the incidents referred to occurred during the policy period.
 
 
 21
 We are likewise of the view that the award of attorney's fees in this case was a modest one considering the services performed, and that the district judge exercised reasonable discretion in awarding such fees. There is nothing set forth in appellant's petition which was not fully considered by us in the original consideration of the case. We are of the same mind as formerly.
 
 
 22
 Accordingly, it is ordered that the petition for rehearing be denied.