**UNION CAMP CORPORATION, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**No. CV476–167.**

United States District Court, S. D. Georgia, Savannah Division.

June 27, 1978.

Thaddeus Holt, Michael K. Wyatt, Washington, D. C., Douglas E. Forrest, New York City, Breed, Abbott & Morgan, Washington, D. C., Thomas J. Mahoney, Jr., Pierce, Ranitz, Mahoney, Forbes & Coolidge, Thomas J. Dillon, Associate Gen. Counsel, Union Camp Corp., Savannah, Ga., for plaintiff.

David A. Handley, Jonathan H. Waller, Jack O. Morse, Gambrell, Russell & Forbes, Atlanta, Ga., Stuart P. Ross, Jack McKay, Hogan & Hartson, Washington, D. C., for defendant.

## ORDER ON CONTINENTAL'S MOTION TO DISMISS BECAUSE OF INVALIDITY OF INSURING CLAUSE

LAWRENCE, District Judge.

Is an insurance policy that insures an employer against losses resulting from racially discriminatory practices under Title VII and 42 U.S.C. § 1981 violative of public policy? Contending that the insuring of employers against the consequences of violations of the Civil Rights Acts serves to encourage acts of discrimination, defendant moves to dismiss Union Camp's action. Both sides agree that this is a pioneer case.

Briefs have been filed and oral argument heard.

### I

Between 1969 and 1972, plaintiff carried, at separate periods, two insurance policies with Continental Casualty Corporation (CNA). Both were "umbrella excess coverage" policies. They provided protection against losses exceeding the coverage afforded by underlying policies. They also covered certain claims not covered by them. Claims not covered by other policies (discrimination) are the basis of this suit.

CNA's 1966 policy provided coverage for certain "occurrences." "The term 'Occurrence' means an event or continuous or repeated exposure to conditions which unexpectedly causes Personal Injury. . ." "The term 'Personal Injuries' whenever used herein, shall mean: . . . Discrimination. . . ." The 1969 policy covered "discrimination except that committed by, at the direction of, or with the consent of the insured." Assuming coverage, CNA was required to defend suits covered by the insurance policies.

In 1971 a class action under Title VII and 42 U.S.C. § 1981 was brought against Union Camp. (*Boles et al. v. Union Camp Corporation et al.*). The suit alleged that Union Camp's alleged actions were done with the "purpose and design" of discriminating against its black employees.[1] CNA denied coverage and declined to provide a defense. Union Camp retained other counsel and defended the suit. More than four years of discovery and negotiation followed.

Plaintiff reached a voluntary settlement with the affected members of the class in 1975. The settlement included back pay to the class members amounting to $800,000. A final decree was entered in September, 1975 in which this Court approved the settlement agreement following a hearing.

---

1. Two months before the *Boles* action was filed against Union Camp the Supreme Court had ruled in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158, that discriminatory intent was not required under the Act which was directed to the consequences of employment practices and not simply the employer's motivation.

Thereafter, Union Camp filed the present suit against CNA seeking to recover the amount of back pay and the attorneys' fees expended in defending the action. As stated, CNA has moved to dismiss the complaint on the theory that the relevant provisions in the contract violate public policy.

## II

Defendant contends that insuring against discrimination would encourage violation of the Civil Rights Acts of 1866 and 1964. It argues that to permit the writing of such insurance "would undermine enforcement of the strong public policy of equal treatment of all persons expressed in the Fourteenth Amendment to the Constitution and in federal anti-discrimination statutes. . . ."

Defendant's basic argument is that an insurance contract is unenforceable if "it is injurious to the public or contravenes some established interest of society." *L'Orange v. Medical Protective Company*, 394 F.2d 57, 60 (6th Cir.). CNA argues that there is a strong public interest in equal employment opportunity. See *Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747, 763, 96 S.Ct. 1251, 47 L.Ed.2d 444. The "reasonably certain prospect of a backpay award" provides incentive for employers to comply with Title VII. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 45 L.Ed.2d 280. Back pay liability under Title VII is aimed at providing an "economic incentive for an employer to obviate discrimination voluntarily, rather than by court decree . . . ." *United Transportation Union Local 974 v. Norfolk and Western Railway Company*, 532 F.2d 336, 342 (4th Cir.). Consequently, back pay awards compensate injured employees while serving the public goal of equal employment opportunity. If, CNA contends, back pay awards were covered by insurance, such deterrent effect would be mitigated.

## III

Union Camp responds that the motion to dismiss fails on four grounds. First, it contends that the Fifth Circuit has specifically

approved insurance for civil rights liability. *Caplan v. Johnson*, 414 F.2d 615 (5th Cir.). In that case the Court of Appeals held that coverage for a § 1983 claim existed under a policy covering false arrests. Public policy was not discussed by the Court in its decision.

Second, plaintiff argues that public policy prohibits insuring against intentional injury and not against intentional acts which unintentionally result in injury. See *Travelers Indemnity Company v. Hood*, 110 Ga.App. 855, 140 S.E.2d 68. Furthermore, says Union Camp, the suit against it was not based on the theory of intentional discrimination.

Third, Union Camp asserts that its action against CNA is not to recover for the assessed damages but is one for the breach of the insurer's duty to defend under the policy.

Finally, Union Camp contends that the cases cited by CNA, particularly the securities cases, *e. g.*, *Globus v. Law Research Service*, 287 F.Supp. 188 (S.D.N.Y.), modified 418 F.2d 1276 (2nd Cir.), cert. denied 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93, are all distinguishable or inapposite.

## IV

■ An insurance policy that is clear and unambiguous and is neither illegal nor against public policy should be enforced by the courts. *American Empire Insurance Company of South Dakota v. Fidelity and Deposit Company of Maryland*, 408 F.2d 72 (5th Cir.), cert. denied, 396 U.S. 818, 90 S.Ct. 55, 24 L.Ed.2d 69. "A contract can not be said to be contrary to public policy unless the General Assembly has declared it to be so, . . . or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law." *Camp v. Aetna Insurance Company*, 170 Ga. 46, 50–51, 152 S.E. 41, 43.

The proposition that insurance taken out by an employer to protect against liability under Title VII will encourage violations of the Act is based on an assumption that is speculative and erroneous. Defendant's

conclusion is but an *a priori* response to the relation between violations of statutes forbidding discriminatory practices and the existence of insurance protecting against same. The argument assumes that employers would deliberately violate the law because their actions are protected by insurance. Here the policy would not cover intentional or consensual acts of discrimination by the insured. The fact that coverage would be excluded in these circumstances would in itself be a deterrent to incentive to violate the Civil Rights Act.

The payment of a large award of back pay to a class and imposition of attorney's fees in a discrimination case conceivably could cripple the employer financially or even put the offending company out of business. Conversely, insurance against liability for discriminatory practices in employment could benefit discriminatees. Where a class of employees is entitled to back pay under a court order and the employer is financially unable to comply with the same, insurance would provide the mandated compensation.[2]

Continental and other insurers which have issued policies containing such clauses have not up to now conceived that they were violating public policy by writing insurance policies insuring against losses resulting from discriminatory employment practices. Neither Congress nor EEOC has interdicted such contracts. Only the issuer of the policy sued on makes such a claim. Exercise of the freedom of contract is not lightly to be interfered with. It is only in clear cases that contracts will be held void as against public policy. *Steele v. Drummond*, 275 U.S. 199, 205, 48 S.Ct. 53, 72 L.Ed. 238; *Greenwood Cemetery, Inc. v. Travelers Indemnity Company*, 238 Ga. 313, 317, 232 S.E.2d 910. This is not one.

## ORDER

Defendant's motion to dismiss is denied.

This June 27th, 1978.

2. Defendant characterizes as "slim" the "likelihood that particular employees may not receive back pay because their employer is insolvent." See Reply Brief of CNA, p. 8.