[No. 51865-3. En Banc. October 9, 1986.]

E–Z LOADER BOAT TRAILERS, INC., *Appellant,* v. THE TRAVELERS INDEMNITY CO., ET AL, *Respondents.*

*Robert E. Anderson* and *Dustin D. Deissner,* for appellant.

*L. William Houger, Suzanne N. Manning,* and *Bruce A. Spanner,* for respondent Travelers Indemnity Co.

*James R. Dickens* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.*), for respondent Highlands Insur-

ance Co.

*Bryan P. Harnetiaux, Robert H. Whaley, Daniel E. Huntington,* and *David M. Grant* on behalf of Washington Trial Lawyers Association, amici curiae for appellant.

*Timothy R. Gosselin* on behalf of Washington Association of Defense Counsel, amicus curiae for respondents.

CALLOW, J.—E–Z Loader Boat Trailers, Inc., a trucking company, sued two of its liability insurers for their failure to defend it against a discrimination suit by an employee. The trial court ruled that the insurance contracts did not cover liability for sex discrimination actions. E–Z Loader appealed. We affirm.

Mr. and Mrs. Williamson and Mr. Stillman, plaintiffs in the discrimination action, were long–time employees of E–Z Loader as long–haul truck drivers. In mid–1980, Mr. Williamson requested a temporary layoff. E–Z Loader granted it, but also temporarily laid off Mrs. Williamson, despite her seniority and against her will. E–Z Loader stated that it laid off Mrs. Williamson because no other driver would team travel with her. Mr. Stillman protested this conduct, and was also laid off.

In July 1980, both parties sued E–Z Loader. Williamson claimed sex discrimination and Stillman claimed age discrimination and retaliatory practices. Their pleadings relied in part on the United States Civil Rights Act of 1964, 42 U.S.C. § 2000 (1982), and its state counterpart, Washington's "Law Against Discrimination", RCW 49.60.

The claims were consolidated for trial. The jury was instructed that the plaintiffs had to prove intentional discrimination in order to prevail. The trial court *rejected* a proposed instruction which stated that neither intent to injure or intent to violate the law were involved in the underlying action. The trial court also *rejected* a proposed instruction which stated that it was not necessary for the plaintiffs to prove that the defendant specifically intended to discriminate against women. The jury awarded the

plaintiffs $148,974.99 for lost wages, mental anguish, suffering, and humiliation. This award included $43,074.99 for attorney's fees and costs.

At the time of the lawsuits, E–Z Loader carried two business insurance policies. For primary insurance coverage, E–Z Loader had purchased Travelers' standard comprehensive general liability coverage, as well as additional protection in the form of Travelers' "Broad Form Comprehensive General Liability Endorsement." E–Z Loader purchased secondary insurance coverage from Highlands Insurance Company.

Both policies protected E–Z Loader from liability stemming from an "occurrence" that causes "bodily injury" or "personal injury". Travelers defined an "occurrence" as

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended from the standpoint of the Insured; . . .

Highlands Insurance defined "occurrence" as

an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period.

The Travelers policy insured E–Z Loader against "bodily injury" caused by an occurrence. Travelers defined "bodily injury" as

bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom; . . .

Highlands Insurance defined "personal injury" as:

(1) bodily injury, sickness, disease, disability or shock, including death arising therefrom, or, if arising out of the foregoing, mental anguish and mental injury; (2) false arrest, false imprisonment, wrongful eviction, wrongful detention, or malicious prosecution; or (3) libel, slander, defamation of character, humiliation or invasion of the rights of privacy, unless arising out of advertising activities; and (4) racial or religious discrimination not committed by or at the direction of the Insured or any

executive officer, director or stockholder thereof, but only with respect to the liability other than fines and penalties imposed by law.

A year after Williamson and Stillman instituted their actions against E–Z Loader, the insured had its agent obtain an addendum to the Highlands policy to include sex discrimination. The Highlands umbrella policy covers E–Z Loader for losses that the Travelers does not cover, and for losses that exceed the $500,000 limits of Travelers' policy.

E–Z Loader tendered the defense of the Williamson/Stillman action to Travelers. Travelers declined to defend or cover the insured. Highlands also declined coverage.

After the trial, E–Z Loader sued Travelers and Highlands for the costs of defense, for coverage and for damages for bad faith. The insurers moved for a summary judgment of dismissal which was granted. The trial court found that the discrimination having been intentional, the claim was not included within the policies' definitions of "occurrence".

The issue presented is whether either company had a duty to defend E–Z Loader against the claim or cover the loss under either of the policies when neither policy mentioned sex or age discrimination as a covered risk.

### INTERPRETATION OF POLICIES

The Travelers comprehensive general liability policy covered the insured employer for all sums the insured became obligated to pay because of bodily injury to an employee which arose out of or occurred in the course of employment. The Travelers policy definition of "occurrence" specified that an occurrence could include an injury which was caused by an accident, but could not encompass an injury intentionally caused. The complaints filed by the Williamsons and Robert Stillman against E–Z Loader alleged direct and intentional violations of chapter 49.60 of the Revised Code of Washington. The Williamsons alleged that Mrs. Williamson was "refused the opportunity to continue working because other males would not drive with her" and that Mrs. Williamson was terminated against her

will. *See* RCW 49.60.180. Mr. Stillman alleged that he was discharged because of an opinion of E–Z Loader that he was too old to work and that he was discriminated against because he opposed E–Z Loader's violation of the laws against discrimination. *See* RCW 49.60.180 and RCW 49.60.210. It was on the basis of these claimed intentional torts that the jury returned the verdict on behalf of the plaintiffs.

The coverage provided by the policies and limited to occurrences does not include coverage for intentional wrongful acts. The resulting discrimination which took place here, as found by the jury, need not have been directly intended by the insured, E–Z Loader, if the results could have been expected from the acts. *Palouse Seed Co. v. Aetna Ins. Co.,* 40 Wn. App. 119, 697 P.2d 593 (1985); *Medina v. Transamerica Ins. Co.,* 37 Wn. App. 360, 680 P.2d 69 (1984); *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wn. App. 621, 681 P.2d 875 (1984). The judgments awarded to the plaintiffs Williamson and Stillman had to have been based upon the unfair practices of E–Z Loader in discharging these plaintiffs. Termination of an employee is not unintentional and does not result from a chance occurrence. *St. Paul Fire & Marine Ins. Co. v. Superior Court,* 161 Cal. App. 3d 1199, 208 Cal. Rptr. 5 (1984). The plaintiffs were discharged, an intentional, not an accidental, act of E–Z Loader.

The claim against E–Z Loader would have been covered by Travelers' policy only if plaintiffs had (a) sustained bodily injury, (b) an accident caused such bodily injury, and (c) the accident (including continuous or repeated exposure to conditions) resulted in bodily injury neither expected nor intended by the insured. The insured was required to prove the existence of each of these three elements to recover under the policy. *Waite v. Aetna Cas. & Sur. Co.,* 77 Wn.2d 850, 467 P.2d 847 (1970).

Likewise the concept of retaliation as prohibited by RCW 49.60.210 can only come about by the performance of an intentional act. Retaliatory conduct involves both

motive and intent. *Kinney v. Bauch,* 23 Wn. App. 88, 596 P.2d 1074 (1979).

 We find no ambiguity in the policies. Neither provided coverage for intentional acts of discrimination. As stated in *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 434–35, 545 P.2d 1193 (1976):

> In construing the language of an insurance contract, the entire contract is to be construed together for the purpose of giving force and effect to each clause. A contract of insurance should be given a fair, reasonable, and sensible construction, consonant with the apparent object and intent of the parties, a construction such as would be given the contract by the average man purchasing insurance. *Ames v. Baker,* 68 Wn.2d 713, 415 P.2d 74 (1966). The contract should be given a practical and reasonable rather than a literal interpretation; it should not be given a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical or ineffective. *Philadelphia Fire & Marine Ins. Co. v. Grandview,* 42 Wn.2d 357, 255 P.2d 540 (1953); 44 C.J.S. *Insurance* § 296 (1945).
>
> The pertinent rules are simple enough. If the policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity where none exists. *Tucker v. Bankers Life & Cas. Co.,* 67 Wn.2d 60, 406 P.2d 628, 23 A.L.R.3d 1098 (1965). However, where the clause in the policy is ambiguous, a meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning. *Glen Falls Ins. Co. v. Vietzke,* 82 Wn.2d 122, 508 P.2d 608 (1973); *Thompson v. Ezzell,* 61 Wn.2d 685, 379 P.2d 983 (1963). A policy provision is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable. *Washington Restaurant Corp. v. General Ins. Co. of America,* 64 Wn.2d 150, 390 P.2d 970 (1964); *Selective Logging Co. v. General Cas. Co. of America,* 49 Wn.2d 347, 301 P.2d 535 (1956).

## BODILY INJURY

The plaintiffs sued E–Z Loader for loss of earnings and

prospective earnings, humiliation, mental anguish and emotional distress. The policies, Travelers and Highlands, at issue here, were never intended to cover loss of earnings or any mental or emotional upset for which plaintiffs recovered a judgment against E–Z Loader. *See Omark Indus., Inc. v. Safeco Ins. Co. of Am.,* 590 F. Supp. 114 (D. Or. 1984). The coverage contemplated actual bodily injury, sickness or disease resulting in physical impairment, as contrasted to mental impairment. Under the Travelers policy the terms "sickness" and "disease" are modified by the word "bodily". Mental anguish and illness, and emotional distress are not covered by the express terms of the Travelers policy. The policy cannot be stretched to the point where it would cover such problems. *Grange Ins. Ass'n v. Hubbard,* 35 Wn. App. 407, 667 P.2d 121, *review denied,* 100 Wn.2d 1023 (1983); *General Ins. Co. of Am. v. Chopot,* 28 Wn. App. 383, 623 P.2d 730 (1981).

## Duty To Defend

■ The duty of an insurer to defend an action brought against a policyholder arises when the complaint is filed and the allegations of the complaint could, if proven, impose liability upon the insured within the coverage of the policy. *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wn.2d 740, 504 P.2d 1139 (1973); *Holland Am. Ins. Co. v. National Indem. Co.,* 75 Wn.2d 909, 454 P.2d 383 (1969); *Briscoe v. Travelers Indem. Co.,* 18 Wn. App. 662, 571 P.2d 226 (1977). An insurance company is required to look beyond the allegations of the complaint if (a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate. In the event of ambiguity or inadequacy the insurer must investigate to discover whether there is a potential for liability. *R.A. Hanson Co. v. Aetna Ins. Co.,* 26 Wn. App. 290, 612 P.2d 456 (1980); *Insurance Co. of North Am. v. Insurance Co.,* 17 Wn. App. 331, 562 P.2d 1004 (1977).

We find no ambiguity or inadequacy in the complaint. We have observed that the complaint clearly accused E–Z Loader of firing Mrs. Williamson because male drivers would not work with her (an intentional act violating RCW 49.60.180) and firing Mr. Stillman because of his age and in retaliation for his support of Mrs. Williamson (an intentional act violating RCW 49.60.180 and .210). We find the complaints to be plain, specific and direct.

### DISPARATE TREATMENT—DISPARATE IMPACT

The insured argues that it should recover because the actions of E–Z Loader brought about discrimination against the plaintiffs by causing a disparate impact upon them. We disagree, holding that the plaintiffs were the victims of disparate treatment.

■ Discrimination may occur because of the disparate treatment of persons or because actions result in a disparate impact upon different people. To prove "disparate treatment" a plaintiff must show that an employer *treated* an individual employee or group of employees differently because of sex, race, age, religion or some other improper differentiation. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977). *See also Texas Dep't of Comm'ty Affairs v. Burdine,* 450 U.S. 248, 256, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). To prove a "disparate impact" from discrimination upon a person or group of persons, a plaintiff must show that an employment practice, which was facially neutral, resulted in discrimination against persons because of their age, sex or other improper distinction. *Griggs v. Duke Power Co.,* 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971). *See Fahn v. Cowlitz Cy.,* 93 Wn.2d 368, 610 P.2d 857 (1980); *Stieler v. Spokane Sch. Dist. 81,* 88 Wn.2d 68, 558 P.2d 198 (1977).

Here, the plaintiffs were the direct targets of the employer because of their sex, age and in retaliation. They were not discriminated against because of some improper policy or goal of the employer, but because the employer

acted directly and purposefully against them as individuals. This was not an unintentional discrimination occurring through a facially neutral employment practice, but an intentional act in violation of RCW 49.60. While discrimination can be proved either under a disparate treatment or disparate impact analysis, a discriminatory motive must be proved under the disparate treatment theory, but not under the disparate impact theory. *Shannon v. Pay 'N Save Corp.*, 104 Wn.2d 722, 709 P.2d 799 (1985). A duty to defend might arise under some policies when disparate impact has been caused by the negligence of an employer. It did not arise in the instant case of disparate treatment. *Castle & Cooke, Inc. v. Great Am. Ins. Co.*, 42 Wn. App. 508, 711 P.2d 1108 (1986); *see also Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178 (7th Cir.), *cert. denied,* 449 U.S. 1033 (1980); *School Dist. 1, Multnomah Cy. v. Mission Ins. Co.*, 58 Or. App. 692, 650 P.2d 929 (1982).

We decline to impose on an insurer coverage of a liability not set forth in the policy. The majority of decisions that enforce coverage for discrimination claims involve liability policies that expressly included discrimination within the definitions of personal injury or bodily injury. *See Solo Cup Co. v. Federal Ins. Co., supra; Union Camp Corp. v. Continental Cas. Co.*, 452 F. Supp. 565 (S.D. Ga. 1978). As stated in *Union Camp*:

> An insurance policy that is clear and unambiguous and is neither illegal nor against public policy should be enforced by the courts. "A contract can not be said to be contrary to public policy unless the General Assembly has declared it to be so, . . . or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law."

(Citations omitted.) *Union Camp,* 452 F. Supp. at 567.

A contract of insurance against the party's own negligence will be enforced only if it is clearly and specifically undertaken by the insurer. *Northwest Airlines v. Hughes Air Corp.*, 104 Wn.2d 152, 158, 702 P.2d 1192 (1985). Nei-

ther the Travelers nor the Highlands contract covers sex or age discrimination actions. We decline to expand contracts to cover discrimination committed intentionally. *See* Willborn, *Insurance, Public Policy and Employment Discrimination,* 66 Minn. L. Rev. 1003 (1982). We also decline to expand contracts to cover sex or age discrimination claims when the parties' intentions that they do so are not clearly undertaken.

We affirm the summary judgment of dismissal, holding that the liability insurance policies purchased by E–Z Loader do not cover the intentional age and sex discrimination and the retaliation committed by the insured.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.

BRACHTENBACH, J., concurs in the result.