ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Plaintiff,

v.

MICROSOFT CORPORATION,
Defendant.

No. Civ. 97–984(JRT/RLE).

United States District Court,
D. Minnesota.

Feb. 4, 1999.

David M Wilk, Oppenheimer Wolff &
Donnelly, St Paul, MN, Jeffrey John Bous-
log, Oppenheimer Wolff & Donnelly, Min-
neapolis, MN, for St. Paul Fire and Marine
Insurance Company, plaintiff.

George F McGunnigle, Lawrence Jeffrey Field, Leonard Street and Deinard, Minneapolis, MN, Michael AG Korengold, Law Firm Unknown, for Microsoft Corporation, defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TUNHEIM, District Judge.

Plaintiff Saint Paul Fire and Marine Insurance Company brings this action against defendant Microsoft Corporation seeking a declaratory judgment defining the scope of plaintiff's obligation to defend or indemnify defendant under its insurance policy with plaintiff (the "Policy").[1] Defendant is presently involved in four similar class action lawsuits in separate jurisdictions: *Stuessy v. Microsoft Corp.* (Ct. of C.P., Phila., Pa.) (the "Stuessy" action); *Davis v. Microsoft Corp.* (Cal.Super.Ct., San Francisco County) (the "Davis" action); *Miller v. Microsoft Corp.* (Mobile County Ct., Ala.) (the "Miller" action); and *Manning, et al. v. Microsoft Corp.* (Harrison County Dist.Ct., Tex.) (the "Manning" action). Plaintiff acknowledges that the Policy obligates it to pay for some of defendant's expenses incurred in defending the Stuessy and Davis actions, but seeks a judgment defining the scope of that obligation. Plaintiff takes the position that it is not obligated to defend or indemnify defendant for any expense related to the Miller and Manning actions.

This matter is before the Court on plaintiff's motion for partial summary judgment declaring only that it has no obligation to defend or indemnify defendant in the Miller and Manning lawsuits. The crux of plaintiff's argument is that the policy expressly denies coverage for damages other than consequential damages, and that consequential damages are not sought by the Miller and Manning plaintiffs.

1. Policy No. 696NK6427

## BACKGROUND

The parties dispute few, if any, of the facts in this matter. Defendant obtained liability insurance from plaintiff in August 1993. The Policy indicates on its face that defendant purchased it from one of plaintiff's insurance representatives in Seattle, Washington.

The parties contest the meaning of several of the Policy's provisions. Relevant portions of text in dispute include the following:

*What this Agreement Covers*

We'll pay amounts protected persons are legally required to pay as *damages* for loss that:

● results from errors, omissions or negligent acts, including breaches of warranty, . . . which arise from your providing computer hardware and/or software. . . .

*This means only claims for consequential damages* which result from an alleged defect or error in any service, software or electronic product furnished by you. But we won't cover:

● claims for return of all or any part of payments made to you by your customers for services, software or electronic products furnished by you;

● expenses you have incurred or may be required to incur to comply with your warranties, representations or promises. We explain what we mean by this in the "Your warranties, representations, and promises" exclusion; or

● claims made by employees or former employees.

(Emphasis added.) Under the heading "Exclusions—What this Agreement Won't Cover," the Policy contains the following language:

**Your warranties, representations and promises.** We won't cover claims for return of all or any part of payments made to you by your customers for services, software or electronic products furnished by you. *Nor will we cover*

*costs and expenses you have incurred or that you have to incur to comply with any warranties,* representations or promises for your services, software or electronic products. This includes repair or *replacement of defective materials, workmanship or products error correction;* or system modification, product recall, withdrawal or inspection. (Emphasis added.) The Policy also contains the following contested language with reference to damages:

> **Damages** Whenever we say Damages in this agreement we mean *compensatory damages* including pre-judgment interest awarded against the protected person on that part of any judgment paid by us.

(Emphasis added.)

> **Right and duty to defend.** We'll have the right and duty to defend any claim or suit for *covered damages* made or brought against any protected person.

(Emphasis added.)

The parties dispute the scope of the damages sought in the Manning and Miller actions as well as the interpretation of the policy's language. The underlying plaintiffs in the Manning and Miller cases filed class action lawsuits against defendant in December 1993 and December 1996, respectively. The complaints in those lawsuits allege that in March 1993 defendant began marketing its MS–DOS 6.0 software program, and that this program was under express and implied warranties. According to the class action plaintiffs, the software contained defects resulting in the loss of computer data associated with its "Doublespace" data compression feature. In November 1993, defendant introduced MS–DOS 6.2. According to the complaints in the underlying lawsuits, defendant introduced this new program in order to rectify the problems with MS–DOS 6.0. Defendant asserts that the new software not only replaced MS–DOS 6.0, but also contained new features not available in the 6.0 version. New features evidenced in the record include a new program called "SCANDISK" that automatically scans the disk drive for defective areas before attempting to write data to it, a warning cautioning users to back up data before installing disk compression, and technology called "DoubleGuard" that periodically checks Doublespace for memory problems and halts the program if a problem is detected. Users could obtain copies of MS–DOS 6.2 by downloading it free of charge from various sources, or by purchasing it from Microsoft at a cost of $9.95. Plaintiffs in both lawsuits are consumers who purchased the software or intend to purchase it rather than downloading it.

### A. The Manning Action

Plaintiffs in the Manning action filed a petition and a first amended petition. Both documents explicitly exclude from the class of plaintiffs consumers who seek "consequential losses resulting from the destruction of data caused by the use of DOS 6.0." Both petitions contain identical statements identifying the damages sought in those actions:

> Those class members who purchased DOS 6.0 and DOS 6.2(a) seek to be reimbursed by Microsoft for the price they paid in purchasing DOS 6.2 or (b) seek to be reimbursed by Microsoft for the price they paid in purchasing DOS 6.0. Those class members who have purchased DOS 6.0 but not DOS 6.2(a) seek money damages from Microsoft in an amount equal to the cost of purchasing DOS 6.2 or (b) seek to be reimbursed by Microsoft for the price they paid in purchasing DOS 6.0.

The amended petition also contains the following statement:

> *No Waiver or Election.* By instituting this lawsuit, Plaintiffs do not intend to waive any rights or make any election of remedies; rather, Plaintiffs intend to reserve, and hereby do reserve, all rights to which they are entitled, including the right to make an election of remedies at the appropriate time.

In addition to the petition, plaintiff has offered into the record a plethora of docu-

ments filed by the parties to the Manning action, including court orders, all of which state that the class of plaintiffs is limited to those who do not seek consequential damages, or that the plaintiff class only seeks recovery of approximately $10.00 per class member—the purchase price of MS-DOS 6.2. Included in these documents is a copy of defendant's reply to the underlying plaintiffs' supplemental brief concerning class action certification. In this document defendant states on the record that "claims for consequential damages are not proper for class treatment," and argues that this "is why the present class definition has been devised."

### B. The Miller Action

The petition in the Miller action explicitly excludes from its class definition consumers who "may seek consequential losses resulting from the destruction of data caused by the use of DOS 6.0." The petition makes the following statement regarding damages sought by the class plaintiffs:

> Those class members who purchased DOS 6.0 and DOS 6.2 seek to be reimbursed by Microsoft for the price they paid in purchasing DOS 6.2. Those class members who have purchased DOS 6.0 but not DOS 6.2 seek money damages from Microsoft in an amount measured by the cost of purchasing DOS 6.2.

Unlike the Manning petition, the Miller petition contains no statement concerning election of remedies.

### ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is required when, after adequate time for discovery and upon motion, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, on which that party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court is required to view the facts in the light most favorable to the nonmoving party when deciding a motion for summary judgment, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *See Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983).

### II. Plaintiff's Claim for Declaratory Judgment

Plaintiff argues that the insurance policy does not obligate it to defend or indemnify defendant in either the Manning or the Miller actions because the petitions filed in those cases explicitly exclude consequential damages. Plaintiff further asserts that the Policy only covers consequential damages. Defendant disputes both of these positions, arguing that the Policy covers more than just consequential damages and that consequential damages are sought in both of the lawsuits at issue.

### A. Choice of Law

As a threshold matter defendant raises the issue of whether Minnesota law or Washington law controls plaintiff's obligations under the Policy. The Court need not resolve this question unless there is an actual conflict between the relevant state laws. *See, e.g., American Casualty Co. v. Bank of Montana System*, 675 F.Supp. 538, 544 (D.Minn.1987); *Jepson v. General Cas. Co.*, 513 N.W.2d 467, 469 (Minn.1994). Plaintiff argues that an actual conflict exists because the laws differ in the extent to which courts are permitted to look beyond the pleadings in order to determine a liability insurer's duty to defend.

Under Washington law, "the duty to defend ... is to be determined from the language of the policy and the allegations in the complaint filed against the insured.

It does not depend on the actual facts that the plaintiffs must eventually establish in order to recover....” *Travelers Ins. Co. v. North Seattle Christian & Missionary Alliance*, 32 Wash.App. 836, 650 P.2d 250, 254 (1982); *see also Underwriters at Lloyds v. Denali Seafoods, Inc.*, 729 F.Supp. 721, 724 (W.D.Wash.1989) (“The duty to defend is determined from the face of the complaint. The law is clear. An insurer's duty to defend arises when a complaint against its insured is filed and is to be determined from the allegations of the complaint.” (internal quotations omitted)). Nevertheless, Washington law requires an insurer to look beyond the face of the complaint and extend broader coverage if necessary when “the allegations are in conflict with facts known to or readily ascertainable by the insurer or ... the allegations of the complaint are ambiguous or inadequate.” *See E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash.2d 901, 726 P.2d 439, 444 (1986).

■ As in Washington, the law in Minnesota is that “[t]he insurer's obligation to defend is generally determined by comparing the 'complaint' with the terms of the policy language.” *See SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 316 (Minn.1995). The duty to defend is not dependent on the merits of the underlying claim. *See Denike v. Western Nat'l Mut. Ins. Co.*, 473 N.W.2d 370, 373 (Minn.App.1991). Minnesota courts similarly hold that if an insurer has knowledge of facts outside the complaint that appear to bring the underlying cause of action within the scope of the policy, the insurer has a duty to either defend or investigate further. *See SCSC Corp.*, 536 N.W.2d at 316. Unlike Washington, however, Minnesota courts have explicitly held that an insurer may look beyond the pleadings to define the true scope of the claim in order to argue that its duty is narrower, rather than broader, than the complaint suggests on its face. *See State Farm Fire & Cas. Co. v. Williams*, 355 N.W.2d 421, 425 (Minn.1984) (“[When] discovery and stipulated facts reveal the true nature of the main action, a court may go beyond the

pleadings to determine whether the uncontradicted facts bring the case outside the coverage of the insurance policy.”); *see also Denike*, 473 N.W.2d at 373; *Senger v. Minnesota Lawyers Mut. Ins. Co.*, 415 N.W.2d 364, 369 (Minn.App.1987) (“When it is established by the insurer that the facts are such that there is no coverage under the policy for any resulting liability, no duty to defend arises even if the complaint can be read to allege a set of facts which, if proved, would be within coverage of the policy.”).

This difference creates an apparent conflict between Minnesota law and Washington law when the insurer seeks to introduce facts outside the pleadings to argue that its obligation to defend is narrower than a review of the underlying complaint would suggest. Plaintiff in the matter at bar seeks to introduce depositions, orders, memoranda and other documents filed in the underlying litigation to prove that the Policy does not cover the litigation because consequential damages are not sought in those lawsuits. Nevertheless, the Court finds for the reasons set forth below that the underlying complaints facially and unambiguously exclude consequential damages from the relief sought. The apparent conflict of laws is thus illusory, because the documents at issue could have no impact on the Court's analysis. The Court therefore declines to resolve the choice of law issue and assumes, arguendo, that the Court's consideration of the contested records is precluded.

**B. The Scope of the Damages Covered by the Policy**

The construction of language in an insurance contract is a matter of law for a court to decide. *See, e.g., Smith v. Continental Cas. Co.*, 128 Wash.2d 73, 904 P.2d 749, 751 (1995); *Franklin v. Western Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn. 1998). A court must review the contract as a whole and give undefined terms their plain and ordinary meanings. *See, e.g., Smith*, 904 P.2d at 751; *Washington Pub.*

*Util. District's Utilities Sys. v. Pub. Util. Dist. No. 1,* 711 P.2d 701, 706 (Wash.1989); *St. Paul Fire & Marine Ins. Co. v. Met-Path, Inc.,* 38 F.Supp.2d 1087, 1091 (D.Minn.1998).

■ When the contract is ambiguous a court must construe it in favor of the insured. *See, e.g., Smith,* 904 P.2d at 751; *Franklin,* 574 N.W.2d at 407. This rule of construction against the drafter of the policy is generally applicable even when the insured is not an average lay person, but a large corporation with an extraordinary amount of business acumen. *See Boeing Co. v. Aetna Cas. and Sur. Co.,* 113 Wash.2d 869, 784 P.2d 507, 514 (1990); *St. Paul Fire & Marine,* 38 F.Supp.2d at 1091–93. A court may not read an ambiguity into a contract, however, where none really exists. *See E–Z Loader Boat Trailers,* 726 P.2d at 443; *St. Paul Fire & Marine,* 38 F.Supp.2d at 1091–92.

■ Defendant argues that the Policy's provision defining "damages" as "compensatory damages" creates an ambiguity in the contract. Defendant asserts that this definition is inconsistent with plaintiff's interpretation of the policy as limiting the scope of coverage to only claims seeking consequential damages. Defendant contends that the sentence under the "What this Agreement Covers" provision beginning, "This means only claims for consequential damages ..." can be harmonized with the rest of the policy under a different analysis. Defendant asserts that the term "consequential damages" should not be given its plain meaning, but is merely a shorthand description used by the Policy drafters to describe the damages not excluded by the "Your warranties" exclusion. Defendant supports this argument by pointing out that the paragraph beginning with the consequential damages reference contains imbedded within it the statement, "We explain what we mean by this in the 'Your warranties, representations, and promises' exclusion." As an alternative argument, defendant suggests that the consequential damages reference is merely a description of the types of consequential damages that the policy will cover and is not meant to be a limitation on coverage of other kinds of damages.

Defendants' reading of the Policy strains the text in a manner that the words truly will not bear. The Policy's provision defining damages as "compensatory damages" is not inconsistent with plaintiff's assertion that Policy only covers consequential damages, for several reasons. First, the section upon which defendant relies does not purport to define the extent of the damages that the policy will cover. Rather, it simply defines the term "damages," as it is used throughout the Policy, as compensatory damages. Applying defendant's interpretation to this section would make the phrase "covered damages" redundant, for it would mean "covered covered damages." Clearly the term "damages" as the Policy uses it does not always mean "covered damages," and the damages covered are defined elsewhere in the policy.

Next, Black's Law Dictionary defines "compensatory damages" as synonymous with "actual damages." *Black's Law Dictionary* 270 (6th ed. abr.1991). "Actual damages" is defined as "compensation for ... actual and real loss or injury" as opposed to "nominal damages," "exemplary damages," or "punitive damages." *Id.* "Compensatory damages" thus refers to the broad spectrum of damages associated with real loss or injury. The term "consequential damages" is defined as "[t]hose losses or injuries which are a result of an act but are not direct and immediate." *Id.* Consequential damages thus compensate a claimant for real losses, and as such, are a subset of compensatory damages. Interpreting the "consequential damages" reference as a limitation on the kind of compensatory damages covered by the policy therefore creates no inherent inconsistency.

Furthermore, defendant's attempt to harmonize the provisions reads the paragraph structure out of the Policy. The paragraph break preceding the phrase, "This means only claims for consequential

damages . . . ," indicates that it is a limitation on the entire paragraph preceding it, namely, the paragraph that sets forth what the policy will cover in general. The "consequential damages" phrase is thus a limitation on *all* damages covered under the policy and is not just an affirmative statement of the consequential damages that the Policy covers. If the paragraph merely spoke to the forms of consequential damages covered by the Policy, the damages "we won't cover" that are listed in the same paragraph under the bullets would ordinarily follow the same topic and would all be consequential in nature. Instead, some of the damages listed, such as customer claims for return of payments, are direct rather than consequential.

Moreover, the cross reference to the "Your warranties exclusion" that defendant relies upon appears in the middle of the paragraph under the bullet beginning, "expenses you have incurred or may be required to incur to comply with your warranties. . . ." This structure demonstrates that the cross-reference is merely an explanation of that bullet—not a reference to the entire paragraph. The Policy's text, therefore, does not support defendant's assertion that "consequential damages" is just a shorthand description of the damages not excluded by the "Your warranties exclusion." The term "consequential damages" should be given its plain and ordinary meaning, since the Policy does not define it elsewhere.

An average lay person reading the Policy would not go through the complicated mental gymnastics that defendant suggests are appropriate in this case, but would read the phrase, "This means only claims for consequential damages," to mean that the Policy covers only claims for consequential damages. A reading of the Policy as a whole yields no genuine conflict with this interpretation. The Policy contains no inherent ambiguity, and the Court will not read ambiguity into it where none exists. The Court finds for these reasons that the Policy covers only claims for consequential damages.

## C. The Scope of the Damages Sought in the Underlying Actions

■ Defendant next argues that the class action petitions seek consequential damages, and therefore, the litigation falls within the scope of plaintiff's obligation to defend it under the Policy. An insurance company's duty to defend is distinct from, and broader than, its duty to indemnify. *See Kirk v. Mt. Airy Ins. Co.,* 134 Wash.2d 558, 951 P.2d 1124, 1128 (1998); *Franklin,* 574 N.W.2d at 406. As noted above, under the laws of both Minnesota and Washington, the contours of a liability insurer's duty to defend are determined primarily by comparing the complaint filed in the underlying litigation with the text of the insurance contract. *See Travelers Ins. Companies,* 650 P.2d at 254; *SCSC Corp.,* 536 N.W.2d at 316. If the underlying complaint unambiguously takes the litigation outside the scope of the Policy, an insurer has no duty to defend unless the allegations of the complaint conflict with facts "known to or readily ascertainable by the insurer." *E–Z Loader Boat Trailers,* 726 P.2d at 444; *see also SCSC Corp.,* 536 N.W.2d at 316.

■ Defendant attacks the clarity of the petitions on several grounds. Defendant first notes that the petitions exclude from the class of plaintiffs consumers who seek "consequential losses *resulting from the destruction of data caused by the use of DOS 6.0.*" (Emphasis added.) Defendant asserts that this language does not exclude from the plaintiff's class consumers who seek consequential losses that did *not* result from the destruction of data. Defendant argues that if the class representatives had intended to leave out all consumers with consequential damage claims, the language at the end of the exclusions would have been omitted.

Although defendant's interpretation of the class definition is plausible when taken out of context, the Court must read the petitions in their entirety and give language whatever meaning is most consistent with the documents as a whole. The

only defect in MS–DOS 6.0 that the petitions complain of is a problem that caused the destruction of data. Although it is possible to speculate that other defects in the software could cause other kinds of losses, a claim for damages resulting therefrom would not be supported by the facts alleged in the petitions. Any claim for consequential damages under the complaints must therefore stem, either directly or indirectly, from the data loss defect alleged. For example, if a consumer sought compensation for computer downtime needed to correct the data loss defect, this injury would indirectly result from the loss of data that engendered the need to make repairs. Since the facts alleged in the petitions support no consequential damage claim other than damages resulting from the loss of data, the only reasonable reading of the contested class definition language is an intent to exclude all consumers seeking consequential damages from the lawsuits.

Furthermore, although the class definitions are certainly relevant to a determination of what kinds of damages are sought in the lawsuits, the damages provisions themselves much more directly address this issue. The petitions in both lawsuits explicitly detail the damages that the class action plaintiffs seek, including reimbursement for the price of MS–DOS 6.0, reimbursement for the price of MS–DOS 6.2, the cost of purchasing MS–DOS 6.2 in the future, and attorney's fees. *Expressio unius est exclusio alterius*[2] is a long-standing cannon of statutory construction. *See State ex rel. Washington State Convention and Trade Center v. Evans*, 136 Wash.2d 811, 966 P.2d 1252, 1262 (1998); *Underwood Grain Co. v. Harthun*, 563 N.W.2d 278, 281 (Minn.Ct.App.1997). The explicit enumeration of the damages sought leads to the conclusion that all other kinds of damages are excluded. Since all of the damages enumerated are direct, rather than consequential, the petitions do not state a claim for consequential damages.

Defendant also asserts that the "No Waiver or Election" clause contained in the Manning petition makes it possible for the plaintiffs in that action to seek consequential damages at a later time, because it reserves the plaintiffs' right to make an election of remedies. Defendant's interpretation of this clause fails to take into account the remainder of the petition, which plainly states a claim for alternative remedies. The Manning petition, unlike the Miller petition, seeks compensation on behalf of each subset of plaintiffs either for the cost of MS–DOS 6.2, or in the alternative, for the cost of MS–DOS 6.0. In this context, and in light of the restrictive definition of class plaintiffs, the election of remedies clause merely preserves the plaintiffs' right to choose between these two options at a later date and does not throw open the door to consequential damages claims.

■ Finally, a direct comparison of the specific damages enumerated in the petitions with the exclusions set forth in the policy leaves room only for the conclusion that the damages sought are not covered by the Policy. The "Your warranties, representations and promises" exclusion plainly states that any claim by customers for the return of payments for software, or for the replacement of a defective product, is not covered by the Policy. The petitions in the underlying lawsuits state claims in part for the return to consumers of the amount it cost them to purchase MS–DOS 6.0 or MS–DOS 6.2. These claims fall within the exclusion regarding claims made for the return of payments for software. The only other damages requested in the petitions are for the cost of MS–DOS 6.2 to compensate MS–DOS 6.0 purchasers who have not yet acquired the newer version. These damages are sought on the ground that they represent the cost of replacing MS–DOS 6.0, which the class plaintiffs argue is defective. The petitions

---

**2.** "The expression of one thing is the exclusion of another." *Black's Law Dictionary* 403

(6th ed. abr.1991).

thus state claims for replacement of a defective product.

Defendant asserts that MS–DOS 6.2 is not a replacement for MS–DOS 6.0 but an "evolutionary upgrade," and therefore, is not covered by the Policy exclusion at issue. The relevant inquiry, however, is not whether MS–DOS 6.2 is an upgrade or a replacement, but whether the class action plaintiffs seek the cost of MS–DOS 6.2 for a purpose excluded by the Policy. Furthermore, although the record reflects that MS–DOS 6.2 does have several features not available in its predecessor, all of the features in evidence are data-loss prevention measures. Therefore, the new upgrade merely corrects the problems inherent in the old version of the software and is correctly labeled as a repair or replacement of a defective product. The petitions in the underlying lawsuits thus seek only damages that the Policy explicitly and plainly excludes.

The petitions in the underlying lawsuits unambiguously exclude consequential damages from the relief the petitioners seek. Furthermore, defendant has come forward with no facts that plaintiff either knew or should have known which would give rise to an obligation to investigate beyond the pleadings and expand its duty to defend. Since the Policy only covers consequential damages, and consequential damages are not sought in the Manning and Miller litigation, plaintiff has no obligation to defend or indemnify defendant in those lawsuits.

### ORDER

Based on the foregoing, and all of the records, files and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for partial summary judgment [Docket No. 44] is **GRANTED.**

2. The Court hereby declares that plaintiff is not obligated to defend or indemnify defendant under Policy No. 696NK6427 against claims asserted in the action filed in the District Court of Harrison County, Texas, entitled, *Mark Manning, Steve Collins and Dana Schnitzer,* *on behalf of themselves and all others similarly situated v. Microsoft Corporation.*

3. The Court hereby declares that plaintiff is not obligated to defend or indemnify defendant under Policy No. 696NK6427 against claims asserted in the action filed in Mobile County Court, Alabama, entitled, *Michael H. Miller, individually and on behalf of all others similarly situated v. Microsoft Corporation.*