[No. 10987–1–I.   Division One.   April 16, 1984.]

THE CITY OF MEDINA, *Appellant,* v. TRANSAMERICA INSURANCE COMPANY, *Respondent.*

*Stafford, Frey & Mertel* and *A. Richard Dykstra,* for appellant.

*Karr, Tuttle, Koch, Campbell & Morrow, Robert P. Piper, William J. Price,* and *Philip A. Talmadge,* for respondent.

JOHNSEN, J.*—The City of Medina appeals from an order granting summary judgment to respondent Transamerica Insurance Company. The undisputed facts are that the owners of two adjacent residential lots in the city of Medina sought to move a house onto one of the lots. After several discussions with city officials regarding compliance with city ordinances, a building permit was issued on March 2, 1979. While the owners were in the process of moving their house on March 8, 1979, a city building inspector issued a stop work order on the ground that the project was not in compliance with Medina City Ordinance 148, § 1–1963. The owners had been specifically advised prior to moving the house that the requirements of the ordinance had been met. A request for a variance was denied on May 8, 1979.

Thereafter, on June 7, 1979, the owners filed suit against the City alleging, *inter alia,* that the variance had been wrongfully denied. The complaint prayed for a writ of mandamus compelling issuance of the building permit. The complaint also included a claim for damages based in part upon the following allegations:

19. The city created a special duty to the plaintiffs herein when Mr. Strickland and other city officials

---

*Judge Oluf Johnsen is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

directly examined Ordinance No. 148, Section 1–1963, and determined that the plaintiffs had complied and issued a building permit.

20. Such duty was breached by the city wrongfully revoking such building permit by misinterpreting the statute at a later date or was breached when the city officials incorrectly advised [the owner] that he had complied with such ordinance and issued the building permit.

21. Subsequent to the issuance of the building permit, [the owner] expended considerable sums of money and effort in moving the house on such property and has been damaged because he is unable to proceed with completion of the project in such sums to be proved at time of trial.

22. By reason of the wrongful actions of the defendants in issuing an invalid building permit or in wrongfully revoking a valid building permit, the plaintiffs have been damaged in the sum of $40,000.00, costs and attorneys' fees, and such other sums to be proved at time of trial.

23. Such damages sustained by the plaintiffs herein were the direct and proximate result of the defendant's breach of [its] duties owed to the plaintiffs.

On June 21, 1979, the City tendered the defense of the suit to its general liability insurer, respondent Transamerica. Transamerica refused the tender and thereafter the trial court, without deciding the claim for damages, ordered that the City issue the building permit. The City appealed from the trial court's ruling. Pending appeal, the suit by the owner against the City was settled, the owners agreeing not to move the building on the lot and the City agreeing to pay the owners the sum of $34,289.56.

The City then brought this action against Transamerica alleging that Transamerica breached its insurance contract by wrongfully refusing to defend the suit and pay the settlement amount. Both parties moved for summary judgment. The trial court granted Transamerica's motion and denied the City's motion and this appeal followed. Error is assigned to those two rulings.

■ An insurer under an indemnity policy is obligated to defend its insured against any lawsuit alleging facts which, if proved, would render the insurer liable under the policy.

*Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wn.2d 740, 504 P.2d 1139 (1973). Transamerica relies on the following policy provisions in denying its obligation to defend this suit.

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . .

"Property damage" is defined as

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

"Occurrence" is defined as

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

The policy also provides that Transamerica is obligated to defend

any suit against the insured [City of Medina] seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.

There is a series of cases which discuss the duty of a governmental entity to exercise reasonable care in issuing a building permit culminating in *J & B Dev. Co. v. King Cy.,* 29 Wn. App. 942, 631 P.2d 1002 (1981), *aff'd,* 100 Wn.2d 299, 669 P.2d 468 (1983). The court there recognized the existence of a "special relationship" between a county and an applicant for a building permit, and that when an applicant justifiably relies on the validity of that permit and suffers loss due to the negligence of the county's agents, there is a breach of duty which permits redress.

In the case before us we are aware that the City owed a duty of reasonable care to the landowner who applied for the building permit and we recognize that the City may have breached that duty either in issuing or revoking that permit. The question remains whether the events constituted an occurrence within the terms of the policy.

Our court has liberally defined the term "occurrence" in construing policy provisions identical to the one here in question. In *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 608 P.2d 254 (1980), the insured had a contract for the manufacture and delivery of precast concrete panels to serve as the exterior walls of two buildings. The purchaser discovered that several panels had been negligently manufactured and were defective. Correction of the defect required the insured to remove, repair and replace the defective panels and the purchaser asserted a claim against the insured based upon the damages occasioned by the resulting delay. The parties settled their dispute, and the insured then sought reimbursement from its insurance carrier. The carrier argued, as does Transamerica here, that because the insured's act of manufacturing the panels was intentional, it could not have been accidental and thus not an occurrence under the policy. The court disagreed, stating that an accident is "'an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause'". *Yakima Cement,* at 215 (quoting *Hauenstein v. St. Paul–Mercury Indem. Co.,* 242 Minn. 354, 358–59, 65 N.W.2d 122 (1954)). Applying this definition, the court held that "it is clear Yakima's unintentional and unexpected *mis*manufacture of the concrete panels is an 'accident'. . .". (Italics ours.) *Yakima Cement,* at 215. The court found further support in the fact that the term "accident" is just part of the broader concept of an "occurrence":

> To begin with, the word "occurrence", to the lay mind, as well as to the judicial mind, has a meaning much

broader than the word "accident". As these words are generally understood, accident means something that must have come about or happened in a certain way, while occurrence means something that happened or came about in any way. Thus *accident* is a special type of *occurrence,* but occurrence goes beyond such special confines and, while including accident, it encompasses many other situations as well.

. . .

It would, therefore, seem that from the usual and ordinary meaning of the words used the word "occurrence" extends to events included within the term "accident" and also to such conditions, not caused by accident, which may produce an injury not purposely or deliberately.

*Yakima Cement,* at 216 (quoting *Aerial Agricultural Serv. of Mont., Inc. v. Till,* 207 F. Supp. 50, 57–58 (N.D. Miss. 1962)).

Thus, there can be little doubt that the City's conduct in either negligently issuing or revoking the building permit constituted an "accident" as that term is defined in *Yakima Cement.* This does not end the inquiry, however.

In order for an act to constitute an occurrence under the policy it must give rise to property damage "neither *expected* nor intended from the standpoint of the insured". (Italics ours.) In *C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co.,* 467 F. Supp. 17, 20 (E.D. Pa. 1979), the court construed identical policy language and concluded that the term "expected" means "more likely than not to occur". Applying this definition to the facts before us, we must conclude that the damage suffered by the owners—loss of use of their house and lot and damage to the house occasioned by the moving process—was more likely to occur than not. Accordingly, the complaint against the City did not allege an "occurrence" and summary judgment was properly granted. In light of this conclusion, we need not decide whether the complaint alleged property damage, an issue Transamerica also vigorously disputes.

The judgment is affirmed.

DURHAM, C.J., and CORBETT, J., concur.

Review denied by Supreme Court July 24, 1984.