781 P.2d 38

**WESTERN CASUALTY & SURETY COMPANY, a Kansas Stock Insurance Company, Plaintiff/Counterdefendant/Appellee,**

v.

**J.R. HAYS and Lois Hays, husband and wife; Hays Roofing & Supply, Inc., an Arizona corporation, Defendants/Counterclaimants/Appellants.**

**2 CA–CV 89–0039.**

Court of Appeals of Arizona, Division 2, Department B.

June 20, 1989.

Reconsideration Denied July 12, 1989.

Review Denied Oct. 31, 1989.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Gerald Gaffaney and Leonce A. Richard, Phoenix, for plaintiff/counterdefendant/appellee.

Duane W. Bolze, Phoenix, for defendants/counterclaimants/appellants.

## OPINION

FERNANDEZ, Judge.

Appellants J.R. and Lois Hays and Hays Roofing & Supply, Inc. (Hays) appeal from a summary judgment entered in favor of appellee Western Casualty & Surety Company in its action seeking a declaratory judgment that it owes appellants no duty to defend or indemnify them under any of three insurance policies. Hays contends the trial court erred in interpreting policy definitions and argues that the court should have granted summary judgment in

favor of Hays. We find no error and affirm.

■ In reviewing a determination on whether an insurance company has a duty to defend a lawsuit brought against its insured, we first examine the facts alleged in the complaint. If the complaint on its face appears to impose a duty to defend, we may then look to other facts not alleged in the complaint to determine whether the case falls outside the policy coverage. *Salvatierra v. National Indemnity Co.*, 133 Ariz. 16, 648 P.2d 131 (App.1982); *Kepner v. Western Fire Insurance Co.*, 109 Ariz. 329, 509 P.2d 222 (1973). Hence, the facts that follow are those found in the entire record, viewed in the light most favorably to Hays, the parties against whom summary judgment was granted. *Partin v. Olney*, 121 Ariz. 448, 591 P.2d 74 (App.1978).

Hays purchased 160 acres of property in the Harquahala Valley in Maricopa County, Arizona in 1959. At some point, the property was conveyed to Hays Roofing & Supply, which entered into negotiations in late 1981 to sell the property to Wallace and Virginia Mollet. Before the property was conveyed to the Mollets on November 11, 1981, it was reconveyed to J.R. and Lois Hays.

The Mollets purchased the property with the intention of planting jojoba plants and producing beans for sale. At the time the property was sold, there were three wells on the property that had not been used for some years. The Mollets proceeded to plant and irrigate jojoba plants. By early 1986, they had planted 26 acres in jojoba but had not yet harvested any beans.

Unbeknownst to either the Mollets or Hays, on June 24, 1982, the Arizona Department of Water Resources designated the Harquahala Basin area as a subsequent irrigation non-expansion area pursuant to A.R.S. § 45–432 of the Arizona Groundwater Code. The proceedings that resulted in the order had commenced in December 1980. In March 1986, the Department of Water Resources ordered the Mollets to cease irrigating the property.

The Mollets sued Hays in May 1986 for intentional misrepresentation and consumer fraud. Their first amended complaint, filed in October 1986, added a cause of action for scheme or artifice to defraud pursuant to the Arizona Racketeering Act, A.R.S. §§ 13–2301 through 13–2317, and a cause of action for breach of contract. The second amended complaint, the one pertinent in this case, was filed in January 1987. It added a fifth cause of action for negligent misrepresentation.

The second amended complaint alleges that J.R. Hays is the president of and major stockholder in Hays Roofing and that his representations were made in both a personal and representative capacity. It alleges that Hays represented that the property had guaranteed water rights for the present and future, that at the time of his representations he knew the Department of Water Resources had commenced proceedings to eliminate irrigation on the property and that he concealed that information from the Mollets. The negligent misrepresentation count is based on the same set of facts as the other counts.

J.R. and Lois Hays are named insureds in two insurance policies issued by Western, a Professional Comprehensive Personal Catastrophe Liability Policy (catastrophe policy) and a Multi–Policy (umbrella policy). Hays Roofing is the named insured in a Multi–Policy (company umbrella policy) issued by Western.

Defense of the Mollets' lawsuit was tendered to Western under all three policies. Hays argues the applicability of only two of the policies on appeal, the company umbrella policy and the catastrophe policy. After Western refused to defend, it brought this action for a declaration that its coverage does not apply. Hays counterclaimed, seeking a declaration of coverage. Both parties moved for summary judgment, and the trial court granted Western's motion, dismissed the counterclaim, ruled there was no duty to defend or indemnify under the present state of the Mollet pleadings, and awarded Western attorney's fees.

■ In its summary judgment motion, Western argued that there is no coverage under any of the policies because the Mol-

lets' lawsuit is not founded upon any alleged "property damage" and because there has been no alleged "occurrence" to trigger coverage under the policies.

## OCCURRENCE

The company's umbrella policy provides that Western must defend and pay

all sums which the **insured** shall become legally obligated to pay as damages because of

**A. bodily injury** or,

**B. property damage**

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage....**

Hays' catastrophe policy provides that:

The Western agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay:

(a) Personal Liability. As damages because of personal injury or property damage.

Western has a duty under that policy to defend "any suit against the insured alleging such injury or damage...."

The definition of "occurrence" in all three policies is identical. " 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." All three policies provide coverage only for occurrences during the policy period.

Hays contends that either the action of the Department of Water Resources in March 1986 ordering the Mollets to cease irrigating the property or the results of that order constituted an occurrence under the policies. Because the applicable policy periods are October 23, 1985 to October 23, 1986 under the umbrella policy and January 1, 1986 to January 1, 1987 under both the company umbrella policy and the catastrophe policy, the Department's March 1986 order and the immediate results of that order are the only events in this case that can possibly constitute an occurrence. Hays argues that any injury that results from ordinary negligence is accidental, citing *Western Exterminating Co. v. Hartford Accident & Indemnity Co.*, 479 A.2d 872 (D.C.App.1984). See also 11 Couch on Insurance 2d § 44:286 (1982). That statement, however, does not resolve the issue.

In order for there to be an occurrence under the policies, there must be an accident.

The word 'accident,' as used in insurance policies, has frequently been defined as—'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force....'

*Century Mutual Insurance Co. v. Southern Arizona Aviation, Inc.*, 8 Ariz.App. 384, 386, 446 P.2d 490, 492 (1968), quoting *Albuquerque Gravel Products Co. v. American Employers Insurance Co.*, 282 F.2d 218, 220 (10th Cir.1960). See also *Kema Steel, Inc. v. Home Insurance Co.*, 153 Ariz. 315, 736 P.2d 798 (App.1986).

Hays contends that the Department's order resulting in the cessation of irrigation was unexpected and unintended because Hays neither expected nor intended such results. That position, however, is too simplistic to be realistic. A review of the Department's order declaring the Harquahala Basin to be a subsequent irrigation non-expansion area indicates that the director issued a directive proposing the declaration on December 23, 1980. After notice issued on January 6, 1981, public hearings were held February 18, 1981 and May 25, 1982. The order issued in June 1982. The March 1986 order precluding the Mollets from irrigating their property was nothing more than an order enforcing the June 1982 order. It cannot seriously be contended that the actions of the Department, taken pursuant to the directives of the legislature under the Groundwater Code, were unintended and unexpected. Thus, there was no triggering accident or occurrence under any of the policies in question.

Having concluded that there was no occurrence under the policy terms, we need not address the issue of whether the Mollets' claimed damages fall under the policy definitions of "property damage."

Appellee will be awarded attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

The summary judgment entered in favor of Western is affirmed.

ROLL, P.J., and LACAGNINA, C.J., concur.