**CITY OF JASPER, INDIANA,**
**Plaintiff–Appellant,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company,**
**Defendant–Appellee.**

No. 90–3462.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1991.

Decided March 3, 1993.

Mark W. Rietman (argued) and Charles L. Berger, Berger & Berger, Evansville, IN, for plaintiff-appellant.

Stephen H. Thomas (argued) and William E. Statham, Statham, Johnson & McCray, Evansville, IN, for defendant-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and ENGEL, Senior Circuit Judge.[*]

ENGEL, Senior Circuit Judge.

The City of Jasper, Indiana brought this diversity action against Employers Insurance of Wausau, A Mutual Company for breach of an insurance contract. On October 5, 1990, after both parties filed motions for summary judgment, the district court entered an order granting summary judgment in favor of Wausau. For the following reasons, we affirm.

## I. BACKGROUND

In 1981, Employers Insurance of Wausau issued a "comprehensive general liability" insurance policy to the City of Jasper. The policy was in effect from August 1, 1981 through November 1, 1982, and required Wausau to indemnify and defend the City in any suit to recover personal injury or property damages "caused by an *occurrence* [emphasis in original]." The policy language is standard in the insurance industry,[1] and defines occurrence as follows:

> "*[O]ccurrence*" means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured* [emphasis in original].

---

[*] Honorable Albert J. Engel, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

[1] Since 1940, the insurance industry has used a standard general liability policy. Wausau's definition of occurrence tracked the language provided in the Comprehensive General Liability Policy, as modified in 1972. *See* JOHN A. APPELMAN, 7A INSURANCE LAW AND PRACTICE, ¶ 4491 at 3 and ¶ 4492 at 15 (Rev. ed. 1979).

In this appeal, we must decide whether, under the policy, Wausau was legally required to defend a negligence action which arose from the circumstances which we here describe.

Charles Habig sued the City of Jasper claiming that the City Zoning Administrator issued him two building permits which eventually proved invalid. In December 1981, Habig obtained permits for the construction of two duplexes. On January 14, 1982, soon after he broke ground, neighboring landowners filed suit in state court to enjoin the ongoing construction. The City, they argued, had issued the permits in violation of a local zoning ordinance. Although the court dismissed that suit, Habig's neighbors appealed to the Jasper Board of Zoning Appeals. At that point, Habig ceased construction. On February 17, 1982, the Board upheld the permits and Habig's neighbors again appealed, this time to state court. On March 17, 1982, an Indiana trial court issued a temporary stop-work order. Eventually, after two trials and two appeals in state court, Habig's neighbors finally prevailed. On June 11, 1984, the Court of Appeals of Indiana affirmed a lower court order that Habig either modify or remove his two duplexes. To comply, Habig demolished one of the units.

On March 14, 1985, Habig filed a tort action against the City of Jasper. Habig sought compensation for property damages he suffered as a result of what he characterized as the City's negligence. Specifically, he alleged that City officials knew or should have known that the permits were issued in violation of municipal zoning laws. Thus, Habig charged that by issuing, authorizing, and upholding the invalid building permits, the City's officials negligently performed their ministerial duties. When it received notice of Habig's suit, the City contacted Wausau to request legal representation and, if necessary, indemnification as provided for in its general liability policy. Wausau refused to defend or indemnify. Because the type of negligence alleged by Habig was not an "occurrence" as defined by the policy, Wausau explained, Habig's action was not covered. As a result, Jasper—which later successfully defended the Habig suit—brought this action against Wausau to recover its litigation costs.

■ The district court denied recovery. Although the parties devoted the bulk of their briefings to the issue whether the acts asserted in Habig's complaint constituted an "occurrence" for purposes of the insurance policy, the court did not address that question except to state that "there is no Indiana law which is clearly dispositive of the matter." *City of Jasper, Indiana v. Employers Insurance of Wausau, A Mutual Company*, Mem. op. at 4 (S.D.Ind. Oct. 5, 1990). Instead, the court regarded the timing of the occurrence as dispositive. In Indiana, the court correctly noted, "an occurrence takes place when the injury upon which the suit is based arises." *Id.* at 10; *see United States Fidelity & Guaranty Co. v. American Insurance Co.*, 169 Ind.App. 1, 345 N.E.2d 267, 270–71 (1976); George J. Couch, 11 Cyclopedia of Insurance Law, § 44:8 at 194 (2d ed. 1982). The antecedent negligence will not by itself constitute an occurrence within the terms of the policy. Thus, the court explained, it is immaterial that the City's allegedly negligent conduct—issuing Habig the permit—took place while the policy was in effect. Habig suffered no damages, the court determined, until 1985 when the Indiana Court of Appeals affirmed the order that Habig demolish or move one of his units. Because, by then, the policy was no longer in effect, "there was no occurrence within the period covered by the Wausau liability policy." Mem. op. at 11. As a result, the court concluded, Wausau was under no duty to defend and, accordingly, was entitled to summary judgment.

## II. ANALYSIS

■ We review the district court's grant of summary judgment *de novo*. *Travelers Insurance Companies v. Penda Corp.*, 974 F.2d 823, 827 (7th Cir.1992). The material facts are not in dispute. Accordingly, we need only determine whether Wausau is entitled to judgment as a matter

of law. *United National Insurance Co. v. Entertainment Group, Inc.*, 945 F.2d 210, 212–13 (7th Cir.1991). Of course, Indiana law governs this diversity action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). While there is no Indiana case law directly on point and hence controlling, what law we have found supports our conclusion that, more likely than not, Indiana's courts would rule that the facts alleged in the underlying complaint against the City do not constitute an occurrence as that term is defined in the policy. Therefore, Wausau was under no obligation to defend the City of Jasper or to reimburse the City for its reasonable costs of successfully defending the Habig suit.

 Under Indiana law, courts will give plain and unambiguous language in an insurance policy its ordinary meaning. *Tate v. Secura Insurance*, 587 N.E.2d 665, 668 (Ind.1992); *Red Ball Leasing, Inc. v. Hartford Accident and Indemnity Co.*, 915 F.2d 306, 308 (7th Cir.1990). However, any ambiguous policy provisions are to be construed in favor of the insured. *Tate*, 587 N.E.2d at 668; *Red Ball Leasing*, 915 F.2d at 308. In considering the scope of an insurer's obligation to defend the insured, courts are guided by the principle that the duty to defend is broader than the duty to indemnify. *Transamerica Insurance Services v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991). Moreover, the duty to defend "is determined solely by the nature of the complaint." *Id.*

Our logic in deciding this appeal, and what we believe would be the logic of Indiana's courts, is relatively simple, even though its application has been the source of much litigation and analysis nationwide.

We conclude that the facts alleged in the complaint, however characterized by artful pleading, do not set forth an "accident" and, consequently, cannot constitute an "occurrence" for purposes of the general liability policy.

Even given the liberality of interpretation in favor of coverage which applies in Indiana as it does generally throughout the nation, *see, e.g., Auto–Owners (Mutual) Insurance Co. v. Stroud*, 565 N.E.2d 1093 (Ind.App.1991) (insurer had duty to defend and indemnify insured whose son accidentally injured would-be thief by intentionally firing shotgun at door intending to frighten the intruder away),[2] the generic term "occurrence" is limited by the language of this specific policy to an occurrence which is by its nature an "accident" within the normal understanding of the parties. There may be and indeed often are occurrences within human experience and understanding that are *not* accidents. As then Judge Souter, interpreting policy language similar to that in this case, noted in *Vermont Mutual Insurance Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986):

> The policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury." *"Occurrence" thus sweeps wider than "accident,"* because "occurrence" is defined to include an injurious exposure to continuing conditions as well as a discrete event.... The injurious exposure must, however, itself be accidental in nature.

*Id.* 517 A.2d at 802 (citations omitted, emphasis added). Also, in our recent decision in *Red Ball Leasing*, we stated that when determining whether an insurer is obligated to indemnify, "[t]he first term that re-

---

2. For other cases allowing certain types of intentional conduct to constitute an "occurrence," see *State of Vermont v. Glen Falls Insurance Co.*, 137 Vt. 313, 404 A.2d 101 (1979) (sheriff's intentional but improper seizure of mobile home); *Northwestern National Casualty Co. v. Phalen*, 182 Mont. 448, 597 P.2d 720 (1979) (insured's assault and chase of victim subsequently tripped and injured by third party); *Patrick v. Head of the Lakes Cooperative Electrical Association*, 98 Wis.2d 66, 295 N.W.2d 205 (App.1980) (cooperative's intentional cutting of trees based on incor- rect interpretation of easement); *Cotton States Mutual Insurance Co. v. Norrell Heating & Air Conditioning Co., Inc.*, 370 So.2d 270 (Ala.1979) (insured's intentional and allegedly false representations concerning warranties); *City of Burns v. Northwestern Mutual Insurance Co.*, 248 Or. 364, 434 P.2d 465 (1967) (city's movement of widow's deceased husband from one grave to another without authorization). *But see Red Ball Leasing, Inc. v. Hartford Accident and Indemnity Co.*, 915 F.2d 306, 309 n. 1 (7th Cir.1990) (collecting cases to the contrary).

quires analysis is 'accident,' because in order to be an 'occurrence' the action must be an 'accident.'" 915 F.2d at 309; *cf. Patrick v. Head of the Lakes Cooperative Electric Association*, 98 Wis.2d 66, 295 N.W.2d 205, 207 (App.1980) (occurrence and accident are not synonymous). In short, the term "accident" limits the definition of the broader term "occurrence."

■ An "accident" for our purposes is defined as "an unusual, unexpected, and unforeseen event." *Red Ball Leasing*, 915 F.2d at 309; 11 COUCH, *supra*, § 44:288 at 443. The incident at issue does not satisfy this definition. What happened here, stripped to its essentials, is that an "action," not an "accident," of the City granted Mr. Habig the right to build two duplexes on his land, to the unhappiness of his neighbors who thereupon filed suit. The action was taken purportedly in harmony with the City's zoning regulations, and Habig acted on that in constructing the duplexes. Plainly, by the allegations of the complaint itself, the City's action was prompted by its conclusion that it was authorized by the zoning ordinance and quite as plainly after much litigation, the Court of Appeals of Indiana concluded that it was not.[3] But the City's error and the fact that the property damage could have been avoided does not transform the intended action into an "accident." "A volitional act does not become an accident simply because the insured's negligence prompted the act." *Red Ball Leasing*, 915 F.2d at 311.

In the final analysis, the "accident" which caused Mr. Habig's injury, in a physical sense, was his own compelled razing of the one duplex in obedience to the ultimate court judgment in the litigation. An extension of the definition of "occurrence" in the policy to cover this type of injury can be justified only by ignoring the limiting language of the definition itself. Wausau was no more obliged to defend the City on the complaint here than to defend the City in inter-governmental litigation arising from the City's efforts to comply with some federal law. We think no realistic insured city could rationally believe it was covered for the consequences of judgmental decisions it might make in the course of performing its municipal duties—even though these decisions might ultimately be reversed by the state courts. The conduct of the insured, in this sense, was therefore not an accident; rather, it was part of the normal and expected consequences of government. There may be some language or some insurance coverage to protect a governmental entity from this type of result, but the policy in question does not.

Not surprisingly, our holding today is consistent with the decisions of courts that have been faced with the same type of issue, *i.e.*, an insurer's duty to defend or indemnify municipal entities for damages and causes of action accruing from what is essentially the exercise of deliberative prerogatives. In *City of Wilmington v. Pigott*, 64 N.C.App. 587, 307 S.E.2d 857 (1983), for example, the City's chief building inspector, Mr. Rowan, ordered the demolition of two greenhouses on the Pigotts' property for allegedly violating the building code. Rowan's determination that building code violations existed with respect to one of the greenhouses later proved erroneous. Upon learning of Rowan's mistake, the Pigotts sued the City for damages resulting from the loss of the greenhouse. The City looked to Travelers Insurance Company for defense and, if need be, indemnity. Travelers, interpreting identical policy language, denied coverage contending that there was no "occurrence" within the meaning of the policy. The City then filed a declaratory judgment action to establish the rights and obligations of all the parties involved. The state trial court held that Travelers was

---

3. We need not speculate as to whether the legal interpretation which prompted the City to grant the permit was correct (in the ultimate sense), or whether if incorrect in its espousal as a legal proposition was so negligent as to expose the City's attorneys to professional liability. It is enough for our own purposes here to observe that, if what the City did was an "action" it was *not* an "accident," and whether the action was negligent or the final decision of Indiana's courts is incorrect is essentially irrelevant to our conclusions here.

obligated to extend coverage for the Pigotts' claim.

The North Carolina Court of Appeals reversed. Focusing on the language of the policy, the court noted that in order for there to have been an "occurrence," there must necessarily have been an "accident." *Pigott*, 307 S.E.2d at 859. In addressing whether Rowan's conduct constituted an "accident," the court stated:

> We cannot label Inspector Rowan's order to the Pigotts to remove their greenhouses an "accident." The decision did not happen by chance and was not expected, unusual or unforeseen. It was certainly intended by the City that as chief building inspector Rowan would exercise his discretion to make these sorts of decisions as he saw fit. While Rowan may have mistakenly or erroneously interpreted the Wilmington building code, his conduct did not amount to an "accident."

*Id.; cf. Wiggins v. City of Monroe*, 73 N.C.App. 44, 326 S.E.2d 39, 43–44 (1985) (insurer required to indemnify municipality in suit alleging that building inspector wrongfully demolished house as dilapidated because plaintiffs' contention that building inspector acted "corruptly or with malice or exceeded the scope of his official authority" was sufficient to bring it within the meaning "occurrence" as defined by *Pigott*).

In *City of Medina v. Transamerica Insurance Co.*, 37 Wash.App. 360, 680 P.2d 69 (1984), the Court of Appeals of Washington was faced with facts similar to ours. There, the City had issued a building permit allowing the owners of two adjacent lots to move a house onto one of the lots. The City further advised the owners that moving the house would not violate the City's building code. Nevertheless, in the midst of the move a city building inspector issued a stop-work order alleging that the project failed to comply with the building code. The owners sued the City which in turn asked its general liability insurer, Transamerica, to defend the action. Transamerica, again interpreting policy language identical to that in this case, declined to extend coverage arguing that there was no "occurrence" within the meaning of the policy. Both the trial and appellate courts agreed. The court of appeals initially acknowledged the liberal construction generally afforded the term "occurrence." *City of Medina*, 680 P.2d at 71. The court went on to hold, however, that while the negligent conduct of the building inspector was accidental, it did not constitute an "occurrence" because the damage accruing to the homeowners was expected. *Id.* at 72.[4]

Admittedly, the foregoing authorities are neither models of judicial clarity nor analysis. Collectively, however, these decisions demonstrate the difficult nature of this conceptual inquiry. Moreover, we think it significant that each of the cases discussed above reach a conclusion consistent with our decision today, namely, that the standard general liability policy does not provide coverage in a case where, absent aggravating circumstances, municipalities request defense and indemnity against what are essentially the results of deliberative

---

**4.** *Western Casualty & Surety Company v. Hays*, 162 Ariz. 61, 781 P.2d 38 (App.1989), while not directly on point, is nevertheless instructive. In that case, the Hays sold land to the Mollets who intended to plant and harvest jojoba. The Arizona Department of Water Resources subsequently designated the surrounding basin as an "irrigation non-expansion area," thereby precluding the Mollets from watering their crops. The Mollets sued the Hays, who in turn looked to Western Casualty to defend the action. In upholding the insurance company's decision to not defend, the Arizona Court of Appeals analyzed the issue this way:

> Hays contends that the Department's order resulting in the cessation of irrigation was unexpected and unintended because Hays neither expected nor intended such results. That position, however, is too simplistic to be realistic.... It cannot seriously be contended that the actions of the Department, taken pursuant to the directives of the legislature under the Groundwater Code, were unintended and unexpected. Thus, there was no triggering accident or occurrence under any of the policies in question.

*Hays*, 781 P.2d at 40. While *Hays* did not involve the State of Arizona defending the propriety of its water department's decision to designate the basin as non-irrigable, there is no principled reason to suggest that the court would have reached a different result had that been the case and had the State's insurer denied coverage.

decisions for which the governmental entities were in whole, or in part, created.

In reaching this result we do not try to reconcile semantic differences or resolve interpretive ambiguities which characterize legal decisions in other circuits. We deal instead with judgmental decisions of municipal legislative bodies which historically have always been subject to legal challenge. We do not say that a municipal corporation may or may not insulate itself from potential financial loss which others seek to impose upon it where its judgment, political, legal or otherwise, does not prevail. We only say that such conduct under the standard general liability policy is not an "accident" subject to protection by a comprehensive general liability policy such as was issued here. We write carefully to limit the application of Indiana law to the facts of this case because we have no business to go further and content ourselves to conclude that under its law, Indiana's courts would not, as a matter of law, entertain the City's complaint. Accordingly, for these reasons and without comment upon the trial judge's reliance upon technical grounds, we AFFIRM the judgment of the district court.