NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DENNIS E. TEUFEL, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a foreign
corporation; KERRY V. HANSON, an Arizona resident,
*Defendants/Appellees/Cross-Appellants*.

No. 1 CA-CV 15-0736
FILED 5-9-2017

Appeal from the Superior Court in Maricopa County
No. CV2014-005493
The Honorable Karen A. Mullins, Judge

**AFFIRMED IN PART, VACATED IN PART**

COUNSEL

Raymond Greer & McCarthy, PC, Scottsdale
By Michael J. Raymond

The Guy Law Firm, PLLC, Scottsdale
By Steven S. Guy
*Co-Counsel for Plaintiff/Appellant/Cross-Appellee*

Tyson & Mendes, LLP, Phoenix
By Lynn M. Allen
*Counsel for Defendant/Appellees/Cross-Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Donn Kessler joined.

---

**S W A N N**, Judge:

¶1        This case concerns an insurer's duty, under two homeowner's insurance policies, to defend its insured in a construction-defect action. With respect to the first policy, we hold that the insurer owed no duty as a matter of law. The policy's terms limit its coverage to damage experienced during the policy period, and the damage is alleged to have occurred after the policy expired. With respect to the second policy, we hold that the duty to defend was not excused as a matter of law under exclusions for liability "under any contract" and liability "arising out of business pursuits." The allegedly defective construction is unrelated to any contract between the insured and the party suing the insured, and the record does not compel the conclusion that the insured was engaged in a business pursuit when he engaged in the conduct at issue. We therefore affirm the entry of summary judgment for the insurer with respect to the first policy, but we reverse the entry of summary judgment for the insurer with respect to the second policy.

**FACTS AND PROCEDURAL HISTORY**

¶2        Dennis Teufel bought an undeveloped lot in Paradise Valley ("the Longlook Property") and decided to construct a residence on it. Before construction began, he purchased a homeowner's insurance policy for the property ("the Longlook Policy") from American Family Mutual Insurance Company ("American"). Through successive renewals, the Longlook Policy remained in place until Teufel sold the completed residence to Cetotor, Inc., in May 2011. Teufel later purchased a different homeowner's insurance policy from American ("the 82nd Place Policy") that remained in effect from January 2012 through January 2013. Both policies included personal-liability coverage and defense provisions.

¶3        Cetotor brought an action against Teufel in November 2012, alleging contract, negligence, and fraud-based claims to the effect that the Longlook Property's hillside was improperly excavated during construction. Teufel requested that American defend and indemnify him

under the personal-liability provisions of the Longlook Policy and the 82nd Place Policy.  American denied coverage with respect to both indemnity and defense.

¶4      Teufel brought a civil action against American, seeking damages and a declaration that American had a duty to defend him against Cetotor.  He moved for summary judgment on the declaratory-relief claim, and American cross-moved for summary judgment, arguing that coverage was not triggered under the Longlook Policy and was excluded under several provisions of the 82nd Place Policy.  The superior court denied Teufel's motion and granted American's, concluding that the Longlook Policy did not provide coverage and that the 82nd Place Policy excluded coverage under its "contractual liability" exclusion.

¶5      Teufel appeals the judgment, and American cross-appeals the court's determination that the 82nd Place Policy's "business pursuits" exclusion did not apply.

## DISCUSSION

¶6      We review summary judgment rulings, and the interpretation of insurance policies, de novo.  *Double AA Builders, Ltd. v. Preferred Contractors Ins. Co.*, 241 Ariz. 304, 305, ¶ 6 (App. 2016).  We interpret policy terms consistent with their plain and ordinary meaning, from the standpoint of a person without training in law or the insurance business.  *Colo. Casualty Ins. Co. v. Safety Control Co.*, 230 Ariz. 560, 568, ¶ 28 (App. 2012); *see also Double AA Builders*, 241 Ariz. at 306, ¶ 11 ("Our opinions concerning coverage do not define the scope of coverage in all cases — they merely interpret the way in which parties choose to allocate risk in private agreements.").  In addition, we construe ambiguities in policy exclusions in favor of the insured.  *Brenner v. Aetna Ins. Co.*, 8 Ariz. App. 272, 276 (1968).

¶7      We determine whether a duty to defend is triggered first by examining the allegations of the complaint against the insured and then, if those allegations facially bring the case within the scope of the policy, by examining whether other facts plainly take the case outside of the coverage.  *Kepner v. W. Fire Ins. Co.*, 109 Ariz. 329, 331 (1973); *see also W. Cas. & Sur. Co. v. Hays*, 162 Ariz. 61, 62 (App. 1989).  A party is entitled to summary judgment only when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).

I.      THE SUPERIOR COURT CORRECTLY ENTERED SUMMARY
        JUDGMENT FOR AMERICAN WITH RESPECT TO THE
        LONGLOOK POLICY.

**¶8**          We begin with the Longlook Policy.  That policy provides that American must defend Teufel in any action brought against him "for damages because of bodily injury or property damage caused by an occurrence to which this policy applies."  The policy defines "occurrence" and "property damage" as follows:

> Occurrence means an accident, including exposure to conditions, which *results during the policy period*, in:
>
> bodily injury; or
>
> property damage.
>
> Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one occurrence.
>
> . . . .
>
> Property Damage means physical damage to or destruction of tangible property, including loss of use of this property.

(Emphasis added.)

**¶9**          By its terms, the policy limits American's duty to defend to actions brought against Teufel for physical damage to property *resulting during the policy period.  See Century Mut. Ins. Co. v. S. Ariz. Aviation, Inc.*, 8 Ariz. App. 384, 385 (1968) ("The general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged." (citation omitted)); *see also Outdoor World v. Cont'l Cas. Co.*, 122 Ariz. 292, 295 (App. 1979).  And the parties agree that the policy, consistent with *United States Fidelity & Guaranty Corp. v. Advance Roofing & Supply Co., Inc.*, 163 Ariz. 476, 482 (1989), and *Lennar Corp. v. Auto-Owners Insurance Co.*, 214 Ariz. 255, 262, ¶ 17 (App. 2007), does not cover defective workmanship standing alone.

**¶10**          Teufel contends that the Longlook Property was "immediate[ly] damage[d]" by the faulty excavation, which took place during the policy period, because that work destabilized the property's

4

hillside. Cetotor's amended complaint, read liberally, alleged policy-period destabilization because it described rockslides that occurred during Teufel's ownership. But those allegations related only to Cetotor's claims of fraud in the property's sale. Cetotor did not allege that the policy-period rockslides caused any physical damage, either abrupt or incremental, during the policy period. At most, the allegations of policy-period rockslides support an inference of faulty workmanship — which, by itself, is not covered under the policy. According to Cetotor's amended complaint, the faulty workmanship did not result in property damage until after the policy's cancellation. Specifically, Cetotor alleged that a rockslide deposited rocks against the residence in November 2011 and August 2012.[1] Because Cetotor's physical-damages claims were limited to post-policy-period events, the action did not implicate American's duty to defend under the Longlook Policy. The superior court correctly granted summary judgment for American on that claim.[2]

II.     THE SUPERIOR COURT ERRED BY ENTERING SUMMARY JUDGMENT FOR AMERICAN WITH RESPECT TO THE 82ND PLACE POLICY.

¶11     We turn next to the 82nd Place Policy, which contains the same duty-to-defend provisions as the Longlook Policy. Because the 82nd Place Policy was in place at the time of the final rockslide and the damage it caused, American's duty to defend Teufel was triggered. The question is whether a policy exclusion relieved American of that duty. Two policy exclusions are at issue in this appeal: a "contractual liability" exclusion and a "business pursuits" exclusion.

---

[1]     Cetotor alleged that the August 2012 rockslide damaged the residence's HVAC units. Cetotor further alleged that the residence's bay windows, exterior stucco, and interior flooring were damaged. Though Cetotor failed to specify when that additional damage occurred, we conclude that the allegation must pertain to post-policy-period events, because it was carried into the amended complaint verbatim from the original complaint, which made no mention of the policy-period rockslides. And Teufel makes no argument to the contrary.

[2]     Teufel asserts that evidence showed policy-period damages. But here, the analysis begins and ends with the allegations of Cetotor's amended complaint, because the duty to defend extends to claims actually made, not claims that might have been made. *See Kepner*, 109 Ariz. at 331.

A.     The "Contractual Liability" Exclusion Did Not Entitle American to Summary Judgment.

¶12     The superior court concluded that coverage was excluded under the following "contractual liability" provision:

Coverage D – Personal Liability does not apply to:

1. Contractual Liability. We will not cover personal liability under any contract or agreement.

Teufel contends that the "contractual liability" exclusion does not apply because Cetotor asserted tort as well as contract claims. The superior court reasoned that Teufel's liability "is necessarily 'under a contract'" because he "would have no personal liability in this case to Cetotor absent the underlying real estate purchase contract between [Teufel] and Cetotor," and "[t]he court sees no significance between the term 'under' as opposed to the phrase 'arising out of.'"

¶13     We disagree with the superior court's conclusion. The alleged negligence — i.e., Teufel's improper excavation during construction — was entirely independent of the later real estate transaction. The purchase contract placed the parties within tortious striking range of one another, but it was otherwise unrelated to liability. We need not decide whether there is a meaningful distinction between "liability under any contract" and "liability arising out of any contract" because here, the tort claims neither occurred under the purchase contract nor arose out of it. The mere fact that the parties had a contract between them is not enough to trigger the "contractual liability" exclusion. To the extent that the extra-jurisdictional case law cited by American suggests otherwise, we reject that suggestion. The "contractual liability" exclusion did not remove American's duty to defend Teufel against Cetotor's claims.[3] *See W. Cas. & Sur. Co.*, 130 Ariz. at 79–80 ("[I]f any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit, because it is impossible to determine the basis upon which the plaintiff will recover (if any) until the action is completed.").

---

[3]     We do not address the viability of Cetotor's claims under *Sullivan v. Pulte Home Corp.*, 237 Ariz. 547 (App. 2015). But even if those claims were subject to dismissal, the duty to defend still exists.

>    B.    The "Business Pursuits" Exclusion Did Not Entitle American
>          to Summary Judgment.

¶14        We next consider American's argument on cross-appeal that the superior court erred by concluding that American was not entitled to summary judgment based on the 82nd Place Policy's "business pursuits" exclusion.  That exclusion provides:

>    4. Business.  We will not cover bodily injury or property
>    damage arising out of business pursuits or the rental or
>    holding for rental of any part of any premises[, with
>    exceptions not applicable here].

The policy defines "business" as "any profit motivated full or part-time employment, trade, profession or occupation and including the use of any part of any premises for such purposes."  Typically, an activity will qualify as a "business pursuit" if it is continuous or regular, and is motivated by profit.  *Indus. Indem. Co. v. Goettl*, 138 Ariz. 315, 319 (App. 1983); *see also* 9A Steven Plitt et al., *Couch on Insurance* § 128:15 (3d ed. Supp. Dec. 2016) [hereinafter "*Couch*"].  An activity may be continuous and regular even if it is part-time, *Couch* § 128:15, or temporary, *Farmers Insurance Co. of Arizona v. Wiechnick*, 166 Ariz. 266, 268 (App. 1990).  And it may be motivated by profit even if profit is not the insured's immediate or even primary consideration.  *Couch* § 128:15.  For example, "[t]he business pursuit exclusion has . . . been held to preclude coverage for residential developers, in their capacities as owners and developers of residential projects, in actions brought against them by condominium or homeowner associations."  *Id.* § 128:16.

¶15        As an initial matter, we hold that the superior court erred by focusing its inquiry on whether Teufel was engaged in a business pursuit "during the course of the 82nd Place Policy."  The "business pursuits" exclusion is not temporally limited.  By its terms, the exclusion applies to otherwise-covered property damage arising out of a business pursuit without regard to when the insured engaged in the pursuit.  *See Indus. Indem. Co.*, 138 Ariz. at 318 (construing similar exclusion).  We therefore examine not whether Teufel was engaged in a business pursuit during the 82nd Place Policy's effective period, but whether he was engaged in a business pursuit when he constructed and sold the residence on the Longlook Property.

¶16        We conclude that Cetotor's amended complaint did not trigger the "business pursuits" exclusion with sufficient certainty to defeat

the duty to defend. To be sure, Cetotor alleged that Teufel was a "builder-vendor," and "builder-vendor" activities necessarily constitute "business pursuits" because a "builder-vendor" is "one who is engaged in the business of building, so that the sale is of a commercial nature, rather than a casual or personal one" (even if it is the person's first such sale or if the residence was initially constructed for the person's own use). *Dillig v. Fisher*, 142 Ariz. 47, 49–50 (App. 1984). But based on the amended complaint, the "builder-vendor" characterization was not a prerequisite to liability on all claims. The "builder-vendor" allegations were part of Cetotor's negligence claim: Cetotor alleged that Teufel was a "builder-vendor" and that "[a]s a builder-vendor, Tefuel [sic] negligently performed or negligently supervised the hillside grading and slope cut." Negligence, however, does not require that the defendant qualify as a "builder-vendor." *See Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007) (holding that a negligence claim requires proof of a duty to conform to a standard of care, breach of that standard, causal connection between defendant's conduct and the resulting injury, and actual damages).

¶17        Further, while evidentiary proceedings may ultimately defeat coverage under the "business pursuits" exclusion, the facts presented in the summary-judgment proceedings were disputed, and therefore could not conclusively support the exclusion as a matter of law. Teufel presented evidence that he "frequently dabbled in real estate by acquiring vacant lots, purchasing and selling personal homes and contracting to build and later selling personal homes." Teufel further asserted that he "invested money from time to time in a loose 'partnership' with a custom home builder, Jamie Vaughn of Carmel Homes Inc.," and "for many years . . . also contracted with Vaughn/Carmel homes for the construction of custom homes intended to be occupied by Mr. Teufel." He provided a list of seven properties (including the Longlook Property) that he had insured under American homeowner's insurance policies, with the intent of owner occupancy, between 1990 and 2007. He also listed four rental properties that he had insured under American business policies from 1999 to 2006. With respect to the Longlook Property, Teufel asserted that he decided to develop the property when he was newly married, and that he originally intended to occupy the completed residence but changed his mind during the construction process because of changed circumstances.

¶18        Based on the foregoing, a factfinder could well conclude at trial that Teufel qualified as a "builder-vendor," or that his development of the Longlook Property otherwise constituted a "business pursuit." But the facts do not *compel* that conclusion on this limited record. Though Teufel had a history of building and selling his homes, a factfinder reasonably

could conclude that the pattern was insufficient to show that Teufel was engaged in a "business" activity when he constructed the personal residence on the Longlook Property. American was not entitled to summary judgment with respect to the "business pursuits" exclusion.

## CONCLUSION

**¶19** We affirm the superior court's entry of summary judgment for American with respect to the Longlook Policy, but vacate the entry of summary judgment for American with respect to the 82nd Place Policy. We hold that the 82nd Place Policy provides coverage, and that neither the "contractual liability" exclusion nor the "business pursuits" exclusion were triggered on this record as a matter of law. In our discretion, we deny both parties' requests for attorney's fees under A.R.S. § 12-341.01.



AMY M. WOOD • Clerk of the Court
FILED: AA